## Schaffer *versus* Mutual Fire Ins. Co.

1. A contract of insurance with a mutual insurance company is not binding until the liability of the insured to contribute to losses is fixed.

2. The by-laws of a mutual insurance company required that the policy should be signed by the insured, and that certain premiums and fees should be prepaid. The agent of the plaintiff went to the office of the company to effect an insurance of certain property of plaintiff and stated that he would pay these premiums and fees when he received the policy. A policy was duly executed on the same day, except the signature of plaintiff, and the latter was enrolled as a member on the books of the company. On the day following the property was destroyed by fire. The agent of plaintiff, the next day tendered the premiums and demanded the policy, which the company refused. In an action against the company for the amount named in the policy. *Held*, that the contract of insurance was not completed and the court properly directed a nonsuit.

March 4th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, WOODWARD, TRUNKEY and STERRETT, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas of *Lehigh county*: Of January Term 1879, No. 163.

Debt by Thomas Schaffer against the Mutual Fire Insurance Company of Lehigh county, upon a policy of fire insurance.

The facts were substantially these: On April 8th 1876, David Scheirer, as the agent of plaintiff, called upon John Koch, the secretary of the defendant, for the purpose of effecting an insurance upon a dwelling-house of the plaintiff. The secretary accepted the risk, and a policy for $1500 was duly prepared, but remained unsigned by the insured. The company is a mutual one, and each member is liable to assessment as often as a loss requires it. Upon taking out this policy, a premium of $1.65 was required to be paid as well as a fee of $1.95, the latter to defray the incidental expenses of insurance. These were not paid at the time, but as Scheirer had another policy upon other premises to be transferred, he said he would pay for them both at the same time. On the same day Schaffer was enrolled as a member upon the books of the company, and a memorandum made of the amount of the insurance, the premium, and that the policy was assigned to the Whitehall Loan and Building Association. On the next morning, April 9th 1876, the building, in the absence of the insured, was destroyed by fire. On April 10th 1876, Scheirer called upon Koch, and asked for the

[Schaffer *v.* Mutual Ins. Co.]

policy, which was handed to him.  He then offered the premium and the fee of membership, but before the money was received, informed the secretary of the fire.  The secretary then refused to accept the payment or to deliver the policy.  Scheirer then stated that he had effected the insurance on the Saturday previous, and that it was agreed that he should pay when he brought the other policy for transfer.  Koch replied that he must now submit the matter to his company.  On May 13th 1876, an endorsement, signed by Koch, was made on the policy in these words, "Not satisfied by the time of filling out the policy and burned, therefore not insured, and cancelled."  Schaffer's name was also erased from the book of membership and a similar entry was there made.  Schaffer testified that after the fire, in a conversation with Koch, the latter stated "it (the house) was insured, but now it is not, because it was burned off."

The following by-laws of the company were printed on the back of the policy and were a part thereof:

"Art. 20.  Every person, on application for membership, shall pay the authorized agent, one dollar and ninety-five cents, for defraying the incidental expenses of the company."

"Art. 22.  All policies issued by this company shall bear the company's seal, to be signed by the president and the insured, and attested by the secretary."

The plaintiff made several offers to prove the custom of the company in effecting insurances without a pre-payment of the premium and the fee of membership, which, under objection, were refused by the court.

The defendant then moved for a nonsuit, which the court, Harvey, P. J., granted, and subsequently refused to take off, in an opinion, inter alia, saying:

"Corporations may contract by parol within the sphere of their proper functions: Hamilton *v.* Lycoming Mutual Insurance Co., 5 Barr 339; Insurance Co. *v.* Porter, 3 Grant 123.  Insurances may be effected without the issuing and delivery of policies, and it is well settled that after application for insurance has been approved, and payment of premiums made on account, the contract is complete without the execution of a policy: Goodall *v.* New England Insurance Co., 25 N. H. 169; Whitington *v.* Firemans' Insurance Co., 29 Barb. 312.  When insurance is thus complete, it is always to be regarded as made upon the terms, and subject to the conditions expressed in the ordinary forms of policies used by the company at the time: Eureka Insurance Co. *v.* Robinson, Rea & Co., 6 P. F. Smith 256.  This was not questioned at the trial; we were asked by the defendants' attorney to direct a compulsory nonsuit, solely upon the ground that a consummated contract of insurance had not been shown by the plaintiff.  There is great uniformity of authority holding it to be error, to submit a question to the jury of which

[Schaffer *v.* Mutual Ins. Co.]

there is no evidence: Whitehill *v.* Wilson, 3 P. & W. 405; Elkins *v.* McKean, 29 P. F. Smith 493; Raby *v.* Cell, 4 Norris 82.

"As we were convinced, after the close of the plaintiff's evidence, that there was no evidence of a consummated contract of insurance, we directed a compulsory nonsuit. Were we in error? That is the only question for judicial solution. Ordinarily the acceptance of a proposal to insure for the premium offered is a completion of the negotiation: Halbrock *v.* Commercial Insurance Co., 2 Dutch. 268.

"The applicant must have done all on his part that is required to be done before he can assert that the contract is consummated. And when payment is the consideration, that gives life to its contract, it must be shown: Marland et al. *v.* The Royal Insurance Co., 21 P. F. Smith 393. The corporation defendant was a mutual fire insurance company chartered January 14th 1874, within the General Insurance Act of April 2d 1855, Pamph. L. 211. Its charter enabled it to insure in all kinds of buildings, merchandise and other property against loss by fire on the mutual principle exclusively, and it was provided that all persons insuring therein 'shall be members thereof during the period they remain so insured and no longer.'

"It was required by the by-laws that any person on application for membership shall pay the authorized agent a stipulated fee for incidental expenses; that all policies shall be signed by the president and the insured; and that the charter and by-laws are a part of the contract of insurance. The plaintiff did not make a personal application for insurance; he sent David Scheirer, secretary of the building association, who was his creditor. In the conversation between Scheirer and the secretary of the company nothing was said about the duration of the policy—how much premium was to be paid—when the policy was to be signed by Schaffer. It was nowhere said by the secretary that the property was insured from that time on. I quote the following from the notes of testimony of Mr. Scheirer: 'I told him I wanted to get it insured right away, as soon as possible, because the policy had expired.

"'Q. What did he say? A. He looked on the policy and said they would take it.

"'Q. When were you to pay the membership and the premium? A. He had another policy in hand which was changed from Solomon Fenstermacher to the Building Association, and I told him he should make the policies all out—and make out a bill and I would pay him all at once as soon as I could fetch the policies, and then he said it was all right.'

"This was the main testimony relied on to prove a complete contract. If it is true that it was further shown that the policy was made out, entered on the policy record and was ready for the

[Schaffer *v.* Mutual Fire Ins. Co.]

signature of Schaffer, no entry was made of premium paid—no premium was charged.

"This evidence is of little value, as are the admissions of Koch after the fire, if the proof of the contract itself is radically deficient. The question here arises did Schaffer become a member of the Mutual Fire Insurance Company of Lehigh county, by reason of what took place between Koch and Schaffer April 8th 1876? Schaffer had neither paid nor agreed to pay any premium. What losses or expenses of the company was he liable for? What action could have been maintained against him upon what transpired between Koch and Scheirer? None. He had entered into no contract to pay anything. He had merely made an application that required a payment of premium to constitute him a member of the company. The by-laws contemplate an application and the payment of a fee not only by those whose application is accepted but by all applicants. Their applications must be accepted. The fee paid is not the premium required to be paid; that is paid when the policy is ready to be signed by the insured and delivered. The policies are executed in duplicates—one is given to the assured and the other retained by the insurer.

"Where then, it may be asked, was there *any* evidence in the cause of the *aggregatio mentium* which is essential in the completion of any contract. Scheirer held a policy in this company and is presumed to have known the requirements of the charter and by-laws. He must have known that a contract could not be binding on the company, and not binding on Schaffer—could not be a contract to insure the safety of Schaffer's property and no contract to render Schaffer liable for losses falling within this class. He did not ask if the property was insured from that time on; but he wanted it insured right away, as soon as possible.

"The fact that he had not the money to pay the premium is very persuasive evidence that he did not approach the office of the company intending to effect a binding insurance upon that day. The payment of this premium was the condition precedent to the insurance. He did not ask the secretary to waive it, but contented himself in saying he would pay when he took the policy. In Marland *v.* The Royal Insurance Co., *supra*, it appeared that some question was asked about payment of the premium when the person asking was assured that he was safe without paying then. It was held that this was no excuse for the non-payment. Mr. Justice AGNEW says: 'The true and easy explanation is, that they did not expect that a fire would take place so speedily and thought they would have time enough to close this business.' These words are peculiarly applicable to this case. Schaffer must have known that he was not a member of the company for he neither paid, offered to pay nor authorized any one to pay one cent to that company on April 8th 1876. No policy was held in trust for him. He could

[Schaffer *v.* Mutual Fire Ins. Co.]

not have understood that he was entitled, as a matter of right, to the undelivered policy. It was because of this want of mutuality in the alleged contract as set up by the plaintiff that the court directed a nonsuit; what was done was inchoate and not complete; it needed the payment of the consideration to vitalize the contract. Viewing the alleged contract in this light we attach no importance to what the secretary did and said after April 8th 1876. So that the application would grow into a consummated contract it was necessary to have a policy, to enrol it on the record of the company and to present it for the signature of the assured. When Koch said Schaffer was insured but now that there was a fire he was not insured, merely meant that if no fire had occurred he would have paid the premium according to and concluded the contract. This evidence gave to what was said between Koch and Scheirer no greater force than the words employed at that meeting. If they failed to consummate the contract no act of Koch subsequently done could operate to consummate it. Payment of the premium was required of Schaffer to constitute him a member.

"This conclusion is regretfully reached. Insurance companies should be held to a very strict rule of accountability. The tendency of these companies to invoke legal technicalities to escape liability should not be encouraged by the courts. But while this rule may produce salutary results and may give stability to this class of contracts, it does not follow that insurance companies can have no legal defence to a suit upon a policy. When one is made to appear, it is the duty of the court to see that it be sustained. Any other course would be unjust. We have been forced to the conclusion that there is no merit in the plaintiff's contention, and that he has offered no evidence which, under the rules of law, as we understand them, entitles him to a verdict."

Plaintiff took this writ, assigning for error the rejection of the offers of testimony and the refusal to take off the nonsuit.

*W. H. Sowden* and *A. B. Longaker*, for plaintiff in error.— The facts show a contract to insure, and warrant the conclusion that the contract was consummated. Does an insured offer to pay when no contract is made? Does the insurer execute a policy and enrol a member without such contract? Or cancel a policy and erase an enrolled membership, if no insurance was effected? This case is alike in principle with that of Bodine et al. *v.* Exchange Fire Ins. Co., 51 N. Y. 117. In the case at bar and that of Bodine there was a waiver of pre-payment, and the agreement of insurance was made in both cases on the understanding that the fees should be paid on a subsequent day. But in the New York case there was a clause in the policy containing a condition that "no insurance should be binding until premium was paid." In the case at bar there was no such condition anywhere. In the former case,

[Schaffer *v.* Mutual Fire Ins. Co.]

there was a motion for a nonsuit, on the ground that the evidence was insufficient; the motion was denied, and on exception taken by defendant the decision was affirmed. The court below charged that if the company, through their agent, so conducted the transaction that Bodine believed himself to be insured, they were liable; that the agent had a right to waive pre-payment and trust the plaintiff for the premium. An agent can waive the pre-payment of the premiums and bind the company: Bodine et al. *v.* Exchange Fire Ins. Co., *supra;* Hotchkiss *v.* Germania Ins. Co., 5 Hun. 90; Farmers' Ins. Co. *v.* Taylor, 23 P. F. Smith 354; Sheldon et al. *v.* Atlantic Fire and Marine Ins. Co., 26 N. Y. 460.

*C. J. Erdman* and *Evan Holben,* for defendant in error.—Payment of the premium and the fees and the applicant's signature to the policy were conditions precedent, and a failure to comply with any of them avoided the policy. The agent of the plaintiff had neither authority nor money to perform these conditions. See Maryland *v.* Ins. Co., 21 P. F. Smith 393. There was no evidence from which a waiver by Koch could be inferred. nor was it within the scope of his authority.

Mr. Justice STERRETT delivered the opinion of the court, May 5th 1879.

The company defendant in error was incorporated under the Act of 1856, "for the purpose of insuring all kinds of buildings, merchandise and other property against loss by fire on the mutual principle exclusively." Mutuality of obligation is of course the very essence of the principle. While the company, on the one hand, undertakes to pay or make good the losses, the insured, on the other, agrees to contribute his proportionate share of current expenses and losses happening during the life of his policy. Their respective promises are mutually dependent upon each other. The undertaking of the one is the only consideration for that of the other. It would be unreasonable therefore to contend that there could be any liability on the part of the company to the insured for the loss of his property, unless he at the same time had paid or assumed to pay his proportionate share of expenses and the losses sustained by other members. The principle upon which the system of mutual insurance rests is utterly inconsistent with any such proposition. The plaintiff in error had neither paid nor agreed to pay any premium or fees, nor had he in any manner assumed the payment of his share of expenses and losses. In fact he had entered into no contract whatever. There was nothing on which the company could have sustained an action against him on an assessment to pay losses, or anything else. At most, he had merely made application, not in person, but through Scheirer, for insurance and membership in the company, without as yet having complied with

[Schaffer *v.* Mutual Fire Ins Co.]

any of the pre-requisites of membership. The charter and by-laws form an essential part of the contract of insurance, and these require the payment of a stipulated amount to defray incidental expenses. They also provide that all policies shall be issued in duplicate and be signed by the insured as well as by the president of the company. Scheirer was not furnished with funds to pay the premium and fees, nor had he any authority to sign Schaffer's name, or in any manner bind him to discharge the obligations of membership, nor did he undertake to do so. At most, the evidence shows that there was a proposition to insure, which the company was ready and willing to accept, and all that was wanting to consummate the contract was the payment of the money by the plaintiff in error and his signature to the policy, both of which were essential and neither of which was waived. Perhaps the secretary might have agreed to postpone the payment of the premium and fees, but there is no sufficient evidence that he did; nor does it appear that he had any authority whatever to dispense with the signing of the policy by the insured. The substance of Scheirer's testimony is that he had another policy to be transferred to the building association; that he requested the secretary to prepare both policies, make out a bill of amount to be paid, and he would pay it when he called for the policies. There is nothing in the testimony that would have justified the jury in finding that at the time of the fire there was any contract to insure, and if the fire had not occurred, no such thing would have been claimed. The correct and natural explanation is that they did not anticipate that a fire would take place so soon, and thought they would have ample time to close the transaction. While the negotiation was thus pending, the property was destroyed, and the company, as it had the right to do, refused to deliver the policy and assume payment of the loss. The questions involved are so fully and ably discussed by the learned president of the Common Pleas, in his opinion refusing to take off the nonsuit, that it is unnecessary to add anything to what he has so well said.

The assignments of error are not sustained, and the judgment is therefore affirmed.