## Universal Fire Insurance Company *versus* Block.

1. A condition in a policy of insurance, exempting the company from liability, until the actual payment of the premium either at its office or to an agent duly authorized in writing to receive it, may be waived by the acts of the parties.

2. The counter-signature of an agent, upon a policy which by its terms requires the same in order to make it valid, gives it the appearance of a valid instrument and estops the company from denying that it is their instrument.

3. A stipulation in the requirements of proof of loss that the chief of the fire department or the magistrate or justice nearest the place of fire shall certify "that he has examined the circumstances attending the loss, . . . . . and verily believes that the assured has honestly sustained loss " is void, as an insurance company has no right to require a public officer to act in the adjustment of its risks.

4. It is the duty of an insurance company, upon finding proofs of loss objectionable, to return the same and inform the assured of the particular defects.

March 27th, 1885.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT JJ.  GREEN and CLARK, JJ., absent.

ERROR to the Court of Common Pleas No. 2, of *Philadelphia county :*  Of July Term 1884, No. 135.

Debt, on a policy of fire insurance, by David Block, against the Universal Fire Insurance Company.  Pleas, non est factum, nil debet, payment with leave, etc.

On the trial, before HARE, P. J., the policy was put in evidence.  It contained, inter alia, the following condition :— " This company shall not be liable by virtue of this policy, or any renewal thereof, until the premium be actually paid to the company at its office in Philadelphia, or to an agent expressly authorized in writing by the company to receive the same."

In the case of loss, the insured was to produce among the evidences of loss, " a certificate under the hand and seal of the chief of the fire department or other officer having charge of the investigation of fires, (if said property is situated within the jurisdiction of any such officer, and, if not, then under the hand and seal of a magistrate or justice of the peace nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, or related to the assured,) stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has honestly sustained loss on the property

herein described to the amount which such officer shall certify."
It was further provided that there could be no recovery by
virtue of the policy "until after a full compliance by the as-
sured with all the foregoing requirements." The policy also
contained a condition that it would not be "valid until coun-
tersigned by B. K. Huntzinger, agent, at Harrisburg."

The evidence showed that Block, who was a resident of
New York city, employed Heller, an insurance broker of the
same place, to obtain insurance upon the stock, machinery
and fixtures of his tin-ware factory. Heller took the applica-
tion to S. R. Anderson, another broker in New York, who
undertook to place the risk in defendant company. Anderson
forwarded the application to B. K. Huntzinger, the agent of
the defendant company at Harrisburg, Pa., who in turn, for-
warded it to the company at Philadelphia. The company
then wrote the policy in suit on November 30th, 1880, and
sent it to Huntzinger by whom it was countersigned and for-
warded to New York, where Block received it a few days
later. Block paid his agent Heller for the policy, and the lat-
ter paid Anderson on instalments, the last being paid on Jan-
uary 14th, 1881. On the same day Block's property was
destroyed by fire. Eleven days after the fire an adjuster, em-
ployed by Block, sent the proofs of loss to the defendant
company, which substantially complied with the policy but
did not have a certificate from the fire marshal. Thees the
company returned, saying that they did "not correspond with
the written instructions;" to this the adjuster replied that the
fire marshal had refused "to have his official capacity used for
the purpose of adjusting losses." On January 25th, 1881, Ander-
son, in accordance with his previous course of dealing, sent
Huntzinger a check for a number of premiums, among which
was included that for this policy. Huntzinger returned it, in-
forming Anderson that he would not accept it. It appeared
that the company kept a running account with Huntzinger, in
which they charged him as their debtor with the premiums on
the policies they issued to him; crediting him with cash pay-
ments made by him from time to time, and his commissions. On
April 30th, 1881, Huntzinger had this policy credited in his
account with the company as a cancelled policy, the entry
being: "B. K. Huntzinger, Cr., April 30th, 1881. By cancel-
led policy 9358, $11.25." The company having refused to pay
the loss, this suit was brought.

The plaintiff offered the proofs of loss in evidence. Objected
to, because they do not show a compliance with the require-
ments of the policy. Objection overruled and proofs admitted,
for the purpose only of showing that preliminary proof had
been given, but not as evidence of the subject matter or

amount of loss sustained.   Exception.  (First assignment of error.)

The defendant presented the following points:—

*First.*—That under the terms of the policy in suit the company defendant would not be liable thereon until the premium had been actually paid to the company at its office in Philadelphia, or to an agent expressly authorized in writing by the company to receive the same.

*Second.*—That there is no evidence in this case that the premium was paid prior to the alleged loss of the plaintiff, so as to make the company liable therefor.

*Answer.*—The court declines to answer the first two points as requested. (Second and third assignments of error), and instructs the jury that the stipulation that the authority to receive the premium must be in writing is a reasonable one, and would preclude a recovery, if not fulfilled or waived, but that they may inquire whether the defendants had not, by their course of dealing, justified the belief that Anderson was duly authorized to receive the premium on their behalf, and that, if such were the case, the want of written evidence would not necessarily operate as a defence. (Fifth assignment of error.)

*Third.*—That the furnishing by the assured of a certificate under the hand and seal of the chief of the fire department, or of a magistrate or justice of the peace, as required by the third section of the seventh condition of the policy, was, unless waived by the company, a condition precedent to the right to recover.

*Fourth.*—That there is no evidence in this case of a waiver of the condition which requires a certificate under the hand and seal of the chief of the fire department, magistrate or justice of the peace, to be furnished the company as part of the particular account or proofs of loss.

*Fifth.*—That under all the evidence the verdict of the jury must be for the defendants.

*Answer.*—The court also declines to answer the last three points in the terms prescribed, (fifth, sixth and seventh assignments of error), and leaves it to the jury to say whether the want of a certificate under the hand and seal of the chief of the fire department, magistrate or justice of the peace has been excused or waived, (eighth assignment of error) and reserves the questions (1) Whether the said requirement was valid in point of law, and (2) Whether there is any evidence that it had been waived by the defendants. or such a state of facts existed as excused the failure to fulfil it, with leave to the court *in banc* to enter judgment for the defendants, if it shall be of opinion with them on any or all of the points so reserved.   (Ninth and tenth assignments of error.)

Verdict for the plaintiff for $1,393.31. The court subsequently entered judgment for plaintiff on the verdict and points of law reserved. Defendant took this writ of error, assigning for error the answers to points above noted and the judgment.

*James C. Sellers*, for plaintiff in error.—The court below allowed the case to go to the jury to "inquire whether the defendants had not, by their course of dealing, justified the belief that Anderson was duly authorized to receive the premium on their behalf," and instructed them that, "if such were the case, the want of written evidence (of authority) would not necessarily operate as a defence." This instruction was erroneous, as it is well established law that the burden is upon the plaintiff to establish the agency and the extent of it: Hays *v.* Lynn, 7 Watts, 524; Moore *v.* Patterson, 4 Casey, 505; Underwriters Association *v.* George, 1 Out., 238.

The furnishing of the fire marshal's certificate, as required by the policy, was a condition precedent to the right to recover: Insurance Co. *v.* Sennett, 5 Wright, 161; Mueller *v.* South Side Fire Insurance Co., 6 Norris, 399.

*George P. Rich* (*Mayer Sulzberger* with him), for defendant in error.—The facts of this case are directly within the exception pointed out in Marland *v.* The Royal Ins. Co., 21 P. F. S., 393, viz: That if the company kept an account with their agent, treated him as their debtor, and charged him with the premium, they would be liable for a loss on a policy which he had delivered without exacting payment of the premium from the assured, notwithstanding a clause in the policy, exonerating them from liability until the premium was actually paid to them.

When the proofs of loss were returned, the company did not specify in what respect they were defective; without such specification the assured is not required to furnish additional proofs: Home Ins. Co. *v.* Cohen, 20 Gratt. (Va.), 312; Madsden *v.* Ins. Co. 1 So. Car., 24; Pratt *v.* Ins. Co., 55 N. Y., 505; Insurance Co. *v.* Morin, 13 W. N. C., 345.

Mr. Justice GORDON delivered the opinion of the court, October 5th, 1885.

The material assignments of error, in this case, with the exception of the third and fourth, may be disposed of in two general classes. (1) That relating to the waiver of the condition of the policy which exempts the company from all liability until the actual payment of the premium either at its office, or to an agent authorized in writing to receive the same.

[Insurance Co. *v.* Block.]

(2) That which embraces the rulings of the court on the effect and character of the proofs of loss.

We will first dispose of the third and fourth assignments, in which complaint is made of the learned judge of the lower court, that he refused to say to the jury there was no evidence that the premium was paid prior to the alleged loss, so as to make the company liable therefor, and that they were instructed to inquire whether the defendant had not, by its course of dealing, justified the belief that Anderson was authorized to receive the premiums on its behalf, and if such were the case, the want of written evidence would not necessarily operate as a defence. We cannot agree that in either of these exceptions the court below has been convicted of error. As to the first, the evidence is that Block paid the required premium to Heller, his broker, from whom he received the policy, before that instrument came into his possession, and if we are to believe Anderson's written receipts, he received this money on and before the 14th of January; then from Anderson it passed to Huntzinger in the shape of a check, but as that came to hand after the fire he refused to receive it. The next question involves not only the fourth assignment but also the second, and may, therefore, be discussed together with them. As we have seen, Block paid the required premium, and in due course received his policy. In looking at the face of that policy he would discover that it was issued in consideration of the premium which he had paid, and though he might have discovered the condition that it would not be effective until the amount of that premium was paid into the treasury of the company, or to its agent, yet he might also observe this significant paragraph, "but this policy shall not be valid until countersigned by B. K. Huntzinger, agent, at Harrisburg." Seeing this he might well and logically conclude (1) That Huntzinger was the duly accredited agent of the company, and (2) the policy being countersigned by him nothing more was required to assure its validity. The regular sequence of thought must necessarily be as follows: the premium has been paid; the policy has come to hand in due course; the consideration appears on its face as though paid to the company; it has been regularly executed, and the stamp of complete verity has been given to it by the counter-signature of the company's agent. In view of all this, after the company had thus compromised itself, it seems almost idle to discuss the powers of Huntzinger, or to inquire particularly concerning their limits, nevertheless we think the evidence warrants us in saying he did not act beyond the strict line of his authority.

Anderson sent the risk to Huntzinger to place in any company he thought fit; he, on his own motion, placed it in the

defendant company, countersigned the policy and forwarded it to Anderson for the purpose of delivery; Anderson did deliver it, received the money and sent it to Huntzinger. Who then, in these particulars, was Anderson's principal if not Huntzinger? Moreover, the company well knew that this risk was in New York, where it had no office, and that Huntzinger was necessarily doing this and similar business through an agent in that city and, for that matter, through this very broker. There is no doubt at all but that there would have been no duffculty whatever about the regularity of this whole transaction had the money reached Huntzinger before the loss, but if in such case the regularity of Anderson's agency, and Huntzinger's method of doing business would have been recognized, we cannot see how, or on what principle consistent with honesty and fair dealing, they can now be repudiated. Again, we repeat, the company knew that Huntzinger was placing its policies in New York; moreover, it knew that he could not go there personally and take contracts of insurance, for he had no power so to do because the company had no such power; such contracts must be made, if at all, in the state of Pennsylvania; how then could it be supposed that the agent was to transact such business except through the regular channels of trade, that is, by the employment of banks or brokers. Under such circumstances as these we cannot say that the court did wrong in referring the evidence to the jury, and we think it was altogether sufficient to warrant the finding of that body. We may agree that the result would have been different had Heller, who was the immediate agent of the plaintiff, neglected to pay over the premium to Anderson or Huntzinger, for then the case would have had some resemblance to that of the Pottsville Mutual Fire Insurance Co. *v.* Minnequa Springs Improvement Co., 4 Out., 137, for in that case the plaintiff's own agent would have been chargeable with neglect which could not have been attributed to the company. Here, however, there is no neglect on the part of any one. Everything was done in the regular and ordinary course of business, and the defence set up must be regarded as utterly without merit.

Nor can we see how the doctrine of estoppel can fail to apply in a controversy such as this. As we have seen the countersigning of the policy by Huntzinger, in accordance with the company's own direction expressed in writing on the face of that instrument, gave it the appearance of a valid paper, and thus Block was assured that every prerequisite had been complied with. By whose default then, if any such there was, did it pass through Anderson and Heller to the plaintiff?

Intentionally and in the regular course of business the

[Kane v. Commonwealth.]

agent of the defendant issued that policy, and no attempt was ever made, as in the case above cited, to countermand or revoke it. It was, then, the default of the company by which Block was misled, and we are at a loss to divine by what rule of law that default can be thrown over on the assured. It is a clear case of equitable estoppel, and the company must bear the consequences of its own neglect. The other point has nothing at all in it. The proofs of loss were made out by a competent adjuster, and if they were not certified by the fire marshal of New York, it was because he properly refused so to do. The company had no right to require a public officer to act in the adjustment of its risks, and the neglect of the assured to even ask a certificate from that officer, would have been no default. Besides this, it was the duty of the company on the receipt of the proofs, to return them if they were objectionable and point out the particular defects. This it refused to do, but replied generally that they did not correspond with the printed instructions, and refused to receive them. This was not sufficient; insurance companies cannot expect thus to escape from the payment of an honest claim through technicalities which do them no harm, and which they themselves can easily cure: Beatty v. The Insurance Co., 16 P. F. S., 9; Insurance Co. v. Flynn & Hamm, 2 Out., 627.

The judgment is affirmed.