## Pennsylvania Insurance Company, Plff. in Err., *v.* Robert J. Carter.

Where an insurance company delivers a policy to a third party, with the understanding that he shall deliver it to the insured and have the premiums collected, and such third party accepts the undertaking and holds himself

NOTE.—The decisions are uniform in holding that the payment of a first premium to the agent of the insurance company is sufficient to put the policy in force, though it provides that it shall not be effective until the premium is paid. Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149, 4 Atl. 8; Susquehanna Mut. F. Ins. Co. v. Elkins, 124 Pa. 484, 10 Am. St. Rep. 608, 17 Atl. 24. And this is true where the policy is delivered by the agent, the company charging him with the premium, though the insured has received credit from the agent. Lebanon Mut. Ins. Co. v. Hoover, 113 Pa. 591, 57 Am. Rep. 511, 8 Atl. 163; Riley v. Commonwealth Mut. F. Ins. Co. 110 Pa. 144, 1 Atl. 528; Scott v. Sun Fire Office, 133 Pa. 322, 19 Atl. 360; Pittsburgh Boat-Yard Co. v. Western Assur. Co. 118 Pa. 415, 11 Atl. 801. But the rule is otherwise where the party receiving the money was not an agent of the company. Pottsville Mut. F. Ins. Co. v. Minnequa Springs Improv. Co. 100 Pa. 137; Flynn v. People's Mut. Live Stock Ins. Co. 4 Pa. Super. Ct. 137. Or where the policy is not delivered. Greene v. Lycoming F. Ins. Co. 91 Pa. 387; Marland v. Royal Ins. Co. 71 Pa. 393.

For authorities as to when an insurance agent is the agent of the insured, see editorial note to Michigan Pipe Co. v. Michigan F. & M. Ins. Co. 20 L. R. A. 277.

responsible for the money or a return of the policy, he becomes an agent of the company for that purpose; and when such third party, through whom the insurance was placed, transacts thé business in the usual mode adopted between the company and him (which was that when he procured policies in the company for other persons, it was accustomed to treat him as its debtor for the premiums, and to periodically render him statements for the same, on which settlements were had), then the obligation of such third party to pay the premium is in effect the payment of it by the insured. Hence, where the insured pays the premium to such third party on receipt of the policy from him, and a loss occurs before such third party receives a statement from the company or settles with the company therefor, the policy is not void for nonpayment of premium.

(Argued October 6, 1887.   Decided October 25, 1887.,

October Term, 1887, No. 138, W. D.   Error to the Common Pleas of Jefferson County to review a judgment in favor of plaintiff in an action of covenant on a policy of fire insurance. Affirmed.

The facts, as they appeared at the trial, and the questions presented, are set forth in the following charge to the jury by the court below, WILSON, P. J.:

"On the 4th day of August, 1885, R. J. Carter, the plaintiff in this suit, brought his action of covenant against the Pennsylvania Fire Insurance Company, of Pittsburgh, to recover the sum of $1,000.   In his statement filed he claims the sum of $1,000, with interest from the 5th day of May, 1885, the time of the fire, to the present date, $122, which, with the principal, aggregates the sum of $1,122.

"The plaintiff, at the same time or soon after, filed his sworn statement of claim, wherein he stated that he was the plaintiff, and the Pennsylvania Insurance Company, the defendant, was justly and legally indebted to him in the sum of $1,000, with interest from the second day of June, 1885, which indebtedness arose upon a certain instrument of writing called a policy of insurance, sealed by the defendant and signed by the president and secretary of the defendant company, which was delivered to the plaintiff on the 24th day of April, 1885, and in which the defendant agreed to indemnify him for the term of one year from the 24th day of April, 1885, in the sum of $1,000, against loss or damage by fire on his stock of merchandise contained in the building then occupied by him, and situated near Punxsutawney, in Young township, Jefferson county, Pa.; and a true and

correct copy of the policy of insurance was annexed to and made part of the statement of claim. The policy has been offered in evidence.

"The plaintiff further stated that the said stock of merchandise, upon which the defendant agreed to indemnify him against loss or damage by fire, was destroyed by fire on the 4th day of May, 1885, at the place described in the said policy of insurance and while the said policy was a subsisting covenant of indemnity; and by reason of the fire he suffered loss on his merchandise in the sum of at least $14,500 and he verily believed that his loss was really a much larger sum; that at the time of the fire he was interested in the merchandise to the full value thereof, and was the absolute owner of it; and that as soon after the said fire as possible he notified the defendant of said loss and rendered to it a particular statement thereof, whereby he became entitled to demand of the defendant the said sum of $1,000, which sum the defendant was legally bound to pay the plaintiff, and which he did demand of the defendant company, and which the said company has refused and neglected to pay in whole or in part thereof; and therefore suit was brought to recover the same.

"To this statement of claim made by the plaintiff the defendant company filed an affidavit of defense on the 5th day of September, 1885, wherein it alleged that it had a true, just, and legal defense to the whole of the plaintiff's claim, the nature and character of which was that neither the said plaintiff nor any other person for him had paid the premium on the policy of insurance mentioned to the company, its officers or agents, or rendered any value to it for the same in any manner whatever; and that it was not liable for any loss that may have occurred to the plaintiff by fire, there being no payment, offer of payment, or tender of payment, to defendant company, its officers or agents, in any manner or form, previous to the 4th day of May, 1885. It was further stated that the defendant or its officers never made or authorized any person to adjust any loss as claimed by the defendant, all of which it expected to be able to prove on the trial. It further filed its plea in court, denying any liability; and later, in September, 1886, filed a special plea, wherein they alleged the plea of nonpayment of premium on the policy by the plaintiff to the defendant.

"The plaintiff, to support the allegations contained in his

statement of claim, which has been read in your hearing, offered evidence to show that on the 24th day of April, 1885, he applied to Jacob Zeitler, in Punxsutawney, for insurance on his stock of general merchandise, in the sum of $4,000, one fourth of which was taken in the defendant company. The application was sent by Mr. Zeitler to Robert Thorn, in the city of Pittsburgh, who received from the defendant the policy of insurance in evidence and transmitted it to Mr. Zeitler, who delivered it to the plaintiff on the 25th day of April, 1885, and was paid by him the sum of $12.50 mentioned in the policy, for the premium. This premium was sent by draft to Mr. Thorn, at Pittsburgh, on the 30th of the same month.

"Robert Thorn, in behalf of plaintiff, testified that in the year 1858 he was appointed general agent of the defendant company, and received a commission from it signed by its officers, and that from that day to this he has been giving the company business. When he was appointed such agent he received a book, designated as a book of instructions to agents of the Pennsylvania Insurance Company, the title of which is: 'Instructions to Agents and Rates of Insurance of the Pennsylvania Insurance Company, of Pittsburgh. Chartered Capital, Three Hundred Thousand Dollars. Incorporated, 1854. Office No. 63 Fourth Street;' and printed by W. S. Haven, in the year 1855. On page 13 of this book of instructions, under the ninth subdivision of the special instructions to the agents as offered in evidence, are these words:

" 'Ninth. The premium is to be paid in cash on delivery of the policy, unless you deem proper to grant a temporary accommodation on your own responsibility and advance it to the company in regular monthly report.' And on the twentieth page of the same book, under the title of 'Remarks in Conclusion,' is this:

" 'This book is designed for the exclusive use of the agents of this company and those co-operating with us. It is to be preserved and returned whenever your business connection with us ceases.'

"On the 24th day of April, 1885, Mr. Thorn took the description of the property of Mr. Carter, received from Mr. Zeitler, and gave the company at its general office a written form, which it adopted, and afterwards handed him the policy in suit, and the same night he mailed the policy to Mr. Zeitler with instruc-

tions to deliver it to Mr. Carter, collect the premium and transmit it to him in the usual course of business, which instructions were complied with at the end of that month. In his transactions with the insurance company Mr. Thorn settled upon periodical reports of transactions as made up by the company, upon which settlements were made and the several amounts due paid over. The form and manner of the settlements were evidenced by several statements and checks covering the transactions. After notice of the loss had been received Mr. Thorn called at the company's office and requested the usual report, which was to include the premium on this policy. This request was refused, and the premium was deposited in the bank, where it has since remained. This statement was called for in the month of May, soon after the fire. Mr. Thorn further testified that this policy was handed to him by the company for the plaintiff, and that this was done under his work as agent; that he was not the agent of the plaintiff and was not interested in the amount to be recovered.

"The plaintiff further offered in evidence the execution of the policy forthwith, notice, delivery of proofs of loss, date of fire, ownership, and value of the property destroyed, and general affirmative performance of his required covenants.

"The defendant to maintain the issue on its part introduced evidence to show that Mr. Thorn was acting as an insurance broker and not as a general agent of the company. The secretary of the company testified that he had been acting in his present capacity for fourteen years last past and during that time Mr. Thorn had not been the agent of the company in any sense, and he could not recall any case in which Thorn was authorized to act, and none as agent; that this premium was never paid before the fire or offered to be paid, and no authority was given Mr. Thorn to collect this premium; that he never gave Mr. Thorn a commission as agent, but gave him his usual broker's commission for services, and he was acting as broker for the parties and was not in any sense an agent for the company. This was supplemented by the testimony of the assistant secretary that the premium was not paid nor offered to be paid before the fire.

"The defense set up by the defendant is nonpayment of the premium, and that under a condition in the policy such omission on the part of the assured avoided the policy and relieved

the company from any liability. The clause, letter F, § 1, reads:

" 'Only such persons as shall hold the commission of this company shall be considered as its agents in any transaction relating to this insurance or any renewal thereof or the payment of premium to the company; any other person shall be deemed to be the agent of the assured, and payment of the premium to such person shall be at the sole risk of the assured.'

"The plaintiff claims that Robert Thorn held a commission from the company, duly authorized, as recited in the policy, and that during the period covered by this entire transaction it remained in full force, never having been revoked by the officers of the company; that he had never resigned the agency of the company, and his business transactions with the company have continued under this commission. In pursuance of the authority thus vested in him the policy in suit had been applied for, received from the defendant, delivered to the plaintiff, premium paid by the assured and received by Mr. Thorn prior to the fire; and the plaintiff alleges that such payment made to Mr. Thorn, under the circumstances of the transaction, was a valid payment to the company, and a verdict should be rendered in favor of the plaintiff for the sum insured, with interest from May 5, 1885.

"To charge a corporation upon the act of an officer or agent it must be shown directly or presumptively either that the act was performed while in the discharge of his ordinary duty in the usual course of business, and was within the general scope and apparent sphere of such duty, or that it was expressly authorized, or that it was performed with the knowledge and implied assent of the directors or of the corporation or its authorized officer, or was subsequently ratified by them. The questions of law involved have been presented to the court, with requests for instructions to the jury which are read and answered. The plaintiff respectfully requests the court to instruct the jury as follows:

"First, if the jury find from the evidence that the act of the general assembly of Pennsylvania incorporating the Pennsylvania Company, of Pittsburgh, the defendant company, provides 'that all policies of insurance, notes, or other contracts that shall be made or entered into by said corporation may be either with or without the seal thereof

and shall be subscribed by the president and attested by the secretary; and being so signed, executed, and attested, shall be binding and obligatory upon said corporation, according to their true intent and meaning;' and if they shall further find from the evidence that the policy in suit is so signed, executed, and attested, is furthermore sealed with the common seal of the corporation, the plaintiff is entitled to recover in case of loss or damage by fire, if the jury furthermore find the facts as stated in the plaintiff's second point.

"Affirmed.

"Second, if the jury find from the evidence that there is nothing contained in the terms and conditions of the policy in suit making an actual payment of the premium to the said defendant company, its officers or agents, a condition precedent to the defendant's liability, or that a default in payment of the premium shall cause a forfeiture; and that it is agreed in said policy, under seal, that the defendant will indemnify the plaintiff against loss or damage by fire in the sum of $1,000 on the merchandise described in said policy, for the term of one year, to wit: from the 24th of April, 1885, to the 24th day of April, 1886; and furthermore that without the prepayment of the premium the defendant delivered said policy to Thorn for the plaintiff's use, with that intent and understanding; and also that said merchandise was destroyed or damaged by fire within the time specified, and that the defendant was served with due notice and proof thereof, the plaintiff is entitled to recover.

"Affirmed.

"Third, if the jury find from the evidence that the defendant gave the policy in suit to Thorn with the understanding that he should cause it to be delivered to the plaintiff and have the premium collected, and that Thorn accepted the undertaking and held himself responsible for the money or a return of the policy, Thorn thereby became the agent of defendant for that purpose. And if the jury further find that Thorn did deliver the policy to plaintiff by hand of his agent, Zeitler, who collected the premium and on April 30, 1885, sent Thorn a bank draft covering this premium, 'thenceforth' Thorn was the depositee of the defendant company and there could be no rescission of the contract without its consent (together with the consent of plaintiff), for to all legal intents the contract of insurance was consummated and the premium belonged to the company as fully as

though it were in its vaults; therefore the plaintiff is entitled to recover.

"Affirmed.

"Fourth, if the jury find from the evidence that Thorn, through whom this insurance was placed in defendant company, transacted the business in the usual mode adopted by the company and him, and that the usual mode was that when he procured policies in said company for or in favor of other persons it was accustomed to regard or treat him as its debtor for the premiums in such cases, and to periodically render to him statements or bills for the same, in accordance with the understanding that he was the company's personal debtor therefor, then the actual payment of the premium to the company before a loss was dispensed with and the obligation of Thorn to pay the premium was in effect the payment of it by the insured, and the plaintiff is entitled to recover.

"Affirmed.

"The defendant requests the court to charge the jury:

"First, that under the terms of the policy the premium is the consideration; and if the jury find from the evidence that the premium was not paid to the defendant company, the policy is void and the plaintiff cannot recover.

"Affirmed.

"Second, that if the jury believe from the evidence that Jacob Zeitler and Robert Thorn were the agents of the plaintiff and not of the defendant company, a payment to either of them would not be a payment to the defendant company or bind it under the policy.

"Affirmed.

"Third, that if the premium was not paid or tendered to the defendant company before the loss by fire occurred, the policy would be inoperative and the plaintiff cannot recover.

"This is affirmed.

"Fourth, that if D. B. Allewelt was not the authorized adjuster of the defendant company, his adjustment would be void.

"Affirmed.

"These requests are based largely upon the views of the counsel arising from their respective theories upon the facts in issue, and the jury will determine from all the evidence admitted on which side is the preponderance of evidence on the main fact, which is the payment or the nonpayment of the premium.

You are instructed that the preponderance of evidence in a case is not alone determined by the number of witnesses testifying to a particular fact or state of facts.     In determining upon which side the preponderance of the evidence is, you should take into consideration the opportunity of the several witnesses for knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit, the probability or improbability of the truth of their several statements, in view of all the other evidence, facts, and circumstances proved on the trial, and from all those circumstances determine upon which side is the weight or preponderance of the evidence.

"There seems to be no middle ground in this case.     If you find for the plaintiff you find for the amount of his claim; if you find for the defendant you simply return a verdict for the defendant."

In the course of the trial the plaintiff, being on the stand as a witness on his own behalf, testified as follows, in answer to questions by his counsel:

*Q.* You say you paid the premium?
*A.* On the 25th of April.
*Q.* To whom?
*A.* Jacob Zeitler.

To these questions and answers defendant objected "for the reason there is a condition in the policy as follows: 'First: Only such person as shall hold the commission of this company shall be considered as its agent in any transaction relating to this insurance or any renewal thereof or the payment of premium to the company; any other person shall be deemed to be the agent of the assured and payment of the premium to such person shall be at the sole risk of the assured.' "

By the court:   Is that a part of your defense?

Counsel for defendant:   It is to show the plaintiff has no right to prove payment to anybody else, unless they prove it to the company.

By the court:   The objection is overruled and the testimony admitted.   (First assignment of error.)

The plaintiff testified that a Mr. Allewelt came to his town, and represented that he was acting for the defendant and was its

adjuster, and conversed with him in reference to adjusting the loss. That he went with Allewelt to Pittsburgh and met the adjusters of other companies; that his whole insurance was $13,-600, and the adjusters offered him $13,000 cash, which offer he accepted. Plaintiff then identified the following paper, and offered it in evidence:

Pittsburgh, May 25, 1885.

The agreement of settlement with Mr. Carter was that for a cash settlement without waiting sixty days, Carter would accept thirteen thousand, and if not paid cash the claim would be for a total loss.

J. B. Kremer, special agent.<br>D. B. Allewelt, adjuster.

Objected to by plaintiff's counsel as being unauthorized by the company.

Counsel for plaintiff: It is Mr. Allewelt's paper; it would not be evidence, but it explains his statement here.

By the Court: It is received to explain the transaction as far as it goes. (Second assignment of error.)

The jury returned a verdict for plaintiff, upon which judgment was entered, and defendant took this writ, assigning as error the admission of evidence as above stated, and the portion of the charge inclosed in brackets.

*W. D. J. Marlin* and *John Conrad,* for plaintiff in error.—Without payment of the premium to the company in accordance with its terms and conditions the policy possessed no life, and a tender of an offer to pay the premium after the fire occurred could not vitalize it or make it effective. When Carter paid the premium to Zeitler he simply paid it to his own agent and was not in any manner relieved of his express contract obliging him to pay it to the company. The payment by Zeitler to Thorn was in no way more effective. Thorn was Zeitler's subagent, and was merely a selected vehicle for the transmission of the money. If he failed to perform his duty, the consequences must fall upon those who engaged him for that purpose. Pottsville Mut. F. Ins. Co. v. Minnequa Springs Improv. Co. 100 Pa. 137.

*W. P. Jenks, C. Z. Gordon,* and *Edward A. Carmalt,* for defendant in error.—The testimony clearly shows what the usual

course of business between Thorn and this insurance company was, *i. e.,* the company delivered its policies to Thorn and held him, with his consent, personally responsible for the payment of the premiums, rendering to him therefor monthly or bi-monthly bills. This being the fact, it follows that the alleged stipulation of prepayment of premium (which does not exist in either the charter or policy of this company, but only in the contemplation of its officers) will not render this policy void. Lebanon Mut. Ins. Co. v. Hoover, 113 Pa. 591, 57 Am. Rep. 511, 8 Atl. 163; Elkins v. Susquehanna Mut. F. Ins. Co. 113 Pa. 387, 6 Atl. 224.

A recovery in this case was not asked upon the ground that Thorn was a duly commissioned agent of the defendant company, but upon the ground set forth in plaintiff's points given above, in support of which we make the following citations:

To the first point: P. L. 1852, § 7, p. 259, P. L. 1854, § 1, p. 74.

To the second point: Trade Ins. Co. v. Barracliff, 45 N. J. L. 543, 46 Am. Rep. 792; Miller v. Brooklyn L. Ins. Co. 12 Wall. 304, 20 L. ed. 402; Franklin F. Ins. Co. v. Colt, 20 Wall. 560, 22 L. ed. 423.

To the third point: Riley v. Commonwealth Ins. Co. 110 Pa. 144, 1 Atl. 528; Universal Ins. Co. v. Block, 109 Pa. 535, 1 Atl. 523.

To the fourth point: Lebanon Mut. Ins. Co. v. Hoover, 113 Pa. 591, 57 Am. Rep. 511, 8 Atl. 163; Elkins v. Susquehanna Mut. F. Ins. Co. 113 Pa. 386, 6 Atl. 224; Continental L. Ins. Co. v. Ashcraft, 18 W. N. C. 97; Bang v. Farmville Ins. & Bkg. Co. 1 Hughes, 290, Fed. Cas. No. 838; Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149, 4 Atl. 8.

PER CURIAM:

As we can discover no flaw in the charge and rulings of the learned judge of the court below, and as the main principle involved in this case has been thoroughly settled by several recent decisions of this court, we must dismiss the exceptions, and concur in the judgment of the common pleas.

Judgment affirmed.