## Essington Enamel Company *v.* Granite State Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Agents—Scope of authority—Secret limitations—Custom—Notice.*

1. In an action upon a policy of insurance, private instructions and secret rules that are known only to the company and its agent cannot be invoked to defeat the very contract it ostensibly holds the agent out with apparent power to make, the liability of the principal being coextensive with the agent's ostensible authority; and where a company has certified an agent to the state insurance department as a general agent with state-wide authority, a policy holder should be given notice of any limitation upon that apparent authority by appropriate words written in the policy.

2. When there is nothing in the record to indicate that insurance was effected in any other method than that in which such contracts are ordinarily made, or that the agent acted in excess or violation of his general authority, evidence to establish a custom among agents of writing fire insurance only in the neighborhood of their residence so as to bind the plaintiff must establish clearly and convincingly such a usage as can fairly be presumed to have entered into the intention of the parties, the true test being that it has existed a sufficient length of time not only to have become generally known to the persons who are to be affected by it, but also to warrant the presumption that contracts were made in reference to such usage or custom.

3. In an action against a foreign insurance company to recover on a policy of fire insurance where it appears that the plaintiff company sought insurance upon the stock and machinery in its plant located in Delaware county, this state, through a firm of insurance brokers in New York city, that the brokers wired a well-known agent in Warren, Pennsylvania, to bind the risk and received a wire reply accepting the

amount asked for, that the agent transmitted to the brokers and the brokers transmitted to the plaintiff certain policies, including the one in suit, covering the insurance, that the representative of the plaintiff company in the transaction did not know, at the time the insurance was placed, the names of the companies in which it would be placed and did not know the agent at Warren, that the defendant company supplied blank policies signed by their president and secretary to the agent and that he was their legally authorized agent at Warren, and there is no evidence that the insurance was effected in any other method than the ordinary, or that there was any deceit or bad faith practiced by the plaintiff or its broker, or that the agent acted in excess or in violation of his authority except only that the written request of the insurance company to the insurance commissioner for the appointment of the agent at Warren among others as their agent for the transaction of business in this state contained the words "in accordance with the powers and instructions given to them by this company," and the private commission of the insurance company to the agent limited his agency to Warren, Warren county, and vicinity, the question of liability on the policy is properly left with the jury and a verdict for plaintiff will be sustained.

*Insurance—Fire insurance—Payment of premiums—Credit—Presumption of payment.*

4. When the usual course of dealing between an insurance company and its agent is for the company to treat the agent as its debtor for the premiums on policies written by him, payment of the premium by the insured to the agent is payment to the company; and when a policy is delivered by a general agent to the broker of the insured and by the broker to the insured without exacting the payment of the premium, the presumption is raised that a credit is extended and this is a waiver of a condition of prepayment. Delivery of a policy properly countersigned by the agent estops the company from saying that the premium was not paid.

Argued Nov. 25, 1910. Appeal, No. 236, Oct. T., 1910, by defendant, from judgment of C. P. Delaware Co., March T., 1909, No. 382, on verdict for plaintiff in case of Essington Enamel Company, Inc., v. The Granite State Fire Insurance Company, of Portsmouth, N. H. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before BROOM-ALL, J.

552 E. ENAMEL CO. *v.* G. S. FIRE INS. CO., Appellant.

In addition to the facts stated in the opinion of the Superior Court it appears that the certificate of authority from the defendant company to their agent at Warren read in part as follows:

"Be it known, That W. F. Henry, of Warren, in the County of Warren and State of Pennsylvania, is appointed, and by these presents duly constituted agent of the Granite State Fire Insurance Company of Portsmouth, New Hampshire, with full power to receive proposals for insurance against loss or damage by fire in Warren, Warren County, Pennsylvania, and vicinity, to receive moneys, and to countersign, renew and consent to the transfer of policies of insurance, signed by the President and attested by the Secretary of the said Granite State Fire Insurance Company, subject to the rules and regulations of said company, and to such further instructions as may from time to time be given by its officers."

The defendant at the trial offered certain points, the sixth of which with the court's answer thereto, was as follows:

If the jury find that Henry was only a local agent of the defendant company and that the territory within which he was authorized to represent said defendant was limited to Warren county and its vicinity, such authority did not vest him with powers of a general agent or authorize him to transact business for defendant company outside of the territorial limits designated. *Answer:* That is true if he was appointed agent as between him and the company only for a territory which did not include Delaware county. His authority, then, so far as the paper here has bearing upon that question, limits him to the district of his appointment. But, as I have said before, if he acted within the scope of his authority and there was no custom which prevented, then so far as this plaintiff is concerned, this contract became a binding contract.

Verdict and judgment for plaintiff for $803.39. Defendant appealed.

*Errors assigned* were (1, 2) in discharging rule for judgment for defendant n. o. v.; (3, 4) in refusing binding instructions for defendant; (6) in qualifying defendant's sixth point, as above; (7) in admitting certificate of the insurance department.

*Arthur S. Arnold*, with him *O. B. Dickinson, Thomas O. Pierce*, and *Frank R. Shattuck*, for appellant.—The local agent was without authority to bind the insurance company: Quinlan v. Ins. Co., 133 N. Y. 356; Gibson Co. v. Carlisle, 3 Ohio Decisions, 27; American Car & Foundry Co. v. Water Co., 221 Pa. 529; Interstate Securities Co. v. Natl. Bank, 35 Pa. Superior Ct. 277; Insurance Co. of No. America v. Thornton, 130 Ala. 222 (30 So. Repr. 614).

The presence of benzine avoided the policy, whether the benzine caused the loss or not: Heron v. Ins. Co., 180 Pa. 257; Whitmarsh v. Ins. Co., 84 Mass. 581.

Failure to pay the premium rendered the contract a nudum pactum: Gosch v. Ins. Co., 33 Pa. Superior Ct. 496.

The overvaluation in this case was so grossly excessive that the court should have set aside the verdict: Furlong v. Ins. Co., 64 Hun, 632 (18 N. Y. Supp. 844); Sternfeld v. Ins. Co., 50 Hun, 262 (2 N. Y. Supp. 766).

*William I. Schaffer*, with him *W. U. Hensel*, for appellee. —A practice among agents, as distinguished from a custom among insurance companies, cannot affect a policy. The usages of a particular trade or a particular place or of a particular individual, must be known to both parties to a contract; and must be certain, uniform and general: Chicago & Alton R. R. Co. v. Harrington, 192 Ill. 9 (61 N. E. Repr. 622); Adams v. Pittsburg Ins. Co., 76 Pa. 411.

An insurance company is bound by the acts of a general agent in the absence of knowledge by the insured of limitations of his authority: Continental Ins. Co. v. Ruckman, 127 Ill. 364 (20 N. E. Repr. 77); German Fire Ins. Co. v.

Columbia Tile Co., 15 Ind. App. .623 (43 N. E. Repr. 41); American Employers' Liability Ins. Co. v. Barr, 68 Fed. Repr. 873.

Where an agent is authorized to take a risk in one place, it is presumed that he has authority to take them anywhere, and a risk taken by him outside of his real jurisdiction will be binding upon the company: Hahn v. Guardian Assur. Co., 23 Oregon, 576 (37 Am. St. Rep. 709); Walker v. Lion Fire Ins. Co., 175 Pa. 345.

As to the alleged presence of benzine the case is ruled by Lancaster Silver Plate Co. v. National Fire Ins. Co., 170 Pa. 151, and Citizens' Ins. Co. v. McLaughlin, 53 Pa. 485.

Payment for the premium was not a condition precedent to the validity of the contract and the countersigning agent may extend credit to the insured or not as he chooses: Lebanon Mutual Ins. Co. v. Hoover, 113 Pa. 591; Healy v. Ins. Co., 50 N. Y. App. Div. 327 (63 N. Y. Supp. 1055); Weisman v. Commercial Fire Ins. Co., 3 Penn. (Del.) 224 (50 Atl. Repr. 93); Elkins v. Susquehanna Mut. Fire Ins. Co., 113 Pa. 386; Arthurholt v. Susquehanna Mutual Fire Ins. Co., 159 Pa. 1; Universal Fire Ins. Co. v. Block, 109 Pa. 535; Snyder v. Life Ins. Co., 202 Pa. 161; Gosch v. Ins. Co., 33 Pa. Superior Ct. 496.

A mere discrepancy in valuation will not in itself constitute sufficient evidence to establish fraud: Insurance Co. of No. America v. Melvin, 1 Walker (Pa.), 362; Huchberger v. Ins. Co., 12 Fed. Cas. No. 6821; Commercial Ins. Co. v. Friedlander, 156 Ill. 595 (41 N. E. Repr. 183).

OPINION BY ORLADY, J., March 3, 1911:

The plaintiff was engaged, at North Essington, Delaware county, Pennsylvania, in the business of enameling leather for its own use, and for trade purposes. It applied for insurance on its stock, machinery and by-products, to Clarke & Cortis, insurance agents and brokers of New York city, and employed them as its brokers to place $17,000 of insurance on the named property. These brokers made a specialty of lumber and tannery insur-

ance; and after placing $4,000 of the amount in New York city, on May 13, 1908, wired to William T. Henry (who was a well-known insurance agent and broker at Warren, Penna.) to bind $10,000 on the machinery and stock of the plaintiff company at Essington, Delaware county, in this state, and the same day received a wire reply binding the risk, and asking for a diagram and amount of other insurance. After some correspondence between these parties, the amount was increased to $13,000 and Henry sent to Clarke & Cortis the policy in suit, which policy, with others, Clarke & Cortis transmitted, on May 27, 1908, to the plaintiff at Essington. On June 9, following, the plant was entirely destroyed by fire, and so far as the defendant's rights are concerned, it was a total loss.

It clearly appears that when Mr. Adams, who represented the plaintiff, solicited the insurance through Clarke & Cortis, he did not know the names of the companies in which it would be placed; he did not know Henry, the defendant's agent at Warren, nor did he know of any custom, trade relation or business understanding between insurance agents or brokers in regard to the time when premiums were to be paid; he only knew that Clarke & Cortis, his brokers, extended to him a credit of thirty days, within which he was to pay his premiums to them, and it as clearly appears, that between Clarke & Cortis and Henry there was a business understanding and agreement, that had been in force for quite a while previous to issuing this policy, by which Clarke & Cortis had a credit of sixty days in their settlements with him. The defendant company supplied blank policies to Henry, which were signed by the president and secretary of the company, on which, immediately preceding their signatures, was the printed statement, "This policy shall not be valid until countersigned by the duly authorized agent of the company at Warren, Penna." The concluding statement on the policy as delivered to the plaintiff being, "Countersigned by W. F. Henry, Agent." It is admitted that W. F. Henry was the legally author-

ized agent of the defendant at Warren, Penna., to solicit insurance, transact business, deliver policies and collect premiums. The policy is dated May 14, 1908, for $1,000, the term mentioned being for one year from May 13, 1908.

It is urged that the authority of Henry was limited to Warren and vicinity, but there is nothing in the request of the defendant to the insurance commissioner, by which Henry had been appointed its agent for the transaction of business in this state, to qualify or limit his authority as to the amount, locality or character of risk, save in the words, "in accordance with the powers and instructions given to them (him) by this company."

This request to the insurance commissioner embraced a list of seventy-four other persons, as agents of the defendant in this state, who were indicated by name and the place of their residences, but none of whom resided in Delaware county. In some counties there is named one person, in others two, three, four, five and seven. If Henry had been known to be a local agent, with authority limited to Warren and vicinity, it is strange that so effective a defense would not have been urged by direct proof rather than by inference and construction of an alleged custom. But there is nothing to indicate that he was a local agent with limited authority. He was certified by the defendant (and so far as the plaintiff could have knowledge on that subject), as a general agent with state-wide authority. By the company's certificate he was appointed its agent, "for the Commonwealth of Pennsylvania," which was ratified by the insurance commissioner, who designated Henry "as an agent to solicit risks in this state." Had the company intended to inform a policy holder of a limitation of that apparent authority, it could and should have done so by appropriate words in the policy. The private instructions and secret rules that are known only by the company and its agent cannot be invoked to defeat the very contract it ostensibly holds the agent out with apparent power to make.

Such rules may be effective in their personal transactions, but should not be extended to third parties who would not be informed of them, even if inquiry had been made. It is true that in the circular issued by the insurance department the word "agents" is used and not "agent," but there is nothing in the Act of April 4, 1873, P. L. 20, 26, that requires a foreign insurance company to name more than one agent for this state, or in any county in it. That matter is left with the company and it may name as many as it thinks proper.

This policy was issued in the regular course of business and the credit extended to the plaintiff of thirty days by the brokers, and the credit of sixty days by the agent of defendant to the brokers, was not contrary to any rule, instructions or custom shown to be in force between the parties so as to affect this plaintiff. The course of dealing as to credit and payment of premiums, was well established, so that the policy became a binding contract upon its delivery at the latest: Scott v. Sun Fire Office 133 Pa. 322; Susq. Mut. Ins. Co. v. Elkins, 124 Pa. 484.

When the usual course of dealing between an insurance company and its agent is for the company to treat the agent as its debtor for the premiums on policies delivered to him, and to render bills periodically for them, the payment of the premium by the assured to the agent is payment to the company: Penna. Ins. Co. v. Carter, 8 Sadler, 191; Elkins v. Ins. Co., 113 Pa. 386, and when a policy is delivered without exacting the payment of the premium, the presumption is raised that a credit is extended and is a waiver of a condition of prepayment: May on Insurance, sec. 360; Universal Fire Ins. Co. v. Block, 109 Pa. 535; Riley v. Ins. Co., 110 Pa. 144; Gosch v. Ins. Co., 33 Pa. Superior Ct. 496; Snyder v. Ins. Co., 202 Pa. 161.

If an agent extends credit for the premium to the assured, and pays the amount to or is charged with it by the company, such payment inures to the benefit of the assured and consummates the contract: 16 Am. & Eng.

Ency. of Law (2d ed.), 859; 19 Cyc. 776. This policy recites that "in consideration of the stipulations herein named and of fifty dollars premium" does insure, etc., which in connection with the concluding clause, that the policy shall not be valid until countersigned by the duly authorized agent at Warren, and the countersigning of the policy and delivery of it by the specified agent, estops the company from now saying that the premium was not paid.

It has been held many times that even if the policy provides that it should not take effect until the premium is paid in cash, the general agent has power to give a credit, and will be held to have waived it, if he delivered the policy without enforcing payment of the premium, and that the countersigning agent is such an agent: Richards on Insurance, 205, 206; Hagan v. Ins. Co., 186 U. S. 423; Lebanon Mutual Ins. Co. v. Hoover, 113 Pa. 591; Elkins v. Ins. Co., 113 Pa. 386; Gosch v. Ins. Co., 33 Pa. Superior Ct. 496; Universal Fire Ins. Co. v. Block, 109 Pa. 535.

The liability of the principal is coextensive with the agent's ostensible authority: Farmers' Mutual Ins. Co. v. Taylor, 73 Pa. 342; Hoge v. Ins. Co., 138 Pa. 66. The question is not so much what authority the agent had in point of fact, as it is what powers a third party dealing with him had the right to suppose he possessed, judging from his acts and the acts of his principal. If the agent is apparently exercising general powers in respect to insurance, the principal cannot discharge himself from liability upon a contract made by the agent by setting up private instructions, which are wholly unknown to the insured: 16 Am. & Eng. Ency. of Law (2d ed.), 916; Walker v. Lion Fire Ins. Co., 175 Pa. 345; Standard Leather Co. v. Ins. Co., 224 Pa. 186.

There is nothing in this record to indicate that this insurance was effected in any other method than that in which such contracts are ordinarily made, or that there was any deceit or bad faith practiced by the plaintiff or

his broker, or that Henry acted in excess or in violation of his general authority. He had issued policies outside of Warren county, and his acts in so doing were ratified by the company. The testimony relied on to establish a custom among agents to bind this plaintiff fell far short of what is required by the decisions. To establish a custom the evidence must establish clearly and convincingly such a usage as can fairly be presumed to have entered into the intention of the parties: Adams v. Ins. Co., 76 Pa. 411. The true test is, that it has existed a sufficient length of time, not only to have become generally known to the dealers who are to be affected by it, but also to warrant the presumption that contracts are made in reference to such usage or custom: Adams v. Ins. Co., 95 Pa. 348. Particular usages and customs of trade or business must be known by the party to be affected by them or they will not be binding, unless they are so notorious, universal and well established that his knowledge of them will be conclusively presumed: Collins v. Mechling, 1 Pa. Superior Ct. 594.

The sixth point presented (sixth assignment) substantially concedes that the extent and character of Henry's agency was for the jury, and that question was carefully submitted to that tribunal.

The insured property was stock and machinery in buildings of the plaintiff, one of which was known as the benzine house. Its relation to the others was not shown, but it does appear, that it was not covered by this policy, and the proof is not clear that it was burned. There is no evidence that there was any of the interdicted thing (benzine) in the building bearing its name at the time the policy was issued or at the time of the fire, and the trial judge was not asked to instruct the jury in regard to it. See Fire Assn. v. Williamson, 26 Pa. 196; Lancaster Silver Plate Co. v. Ins. Co., 170 Pa. 151; Citizens' Ins. Co. v. McLaughlin, 53 Pa. 485.

The alleged overvaluation of the property was satisfactorily explained by witnesses, who were evidently be-

lieved by the jury, and the true value of the property destroyed was clearly fixed. There was no error in the manner in which that question was submitted to them.

The trial in the court below was fairly conducted, and the defendant had no ground for complaint as to the manner of its submission to the jury as it withdrew its motion for a new trial. We find no reversible error in this record and the judgment is affirmed.