# McGinness *v.* Caledonian Insurance Company of Scotland, Appellant.

*Insurance—Fire insurance—Permission to remove insured articles—Verbal permission by agent of insurance company—Liability on policy.*

In an action to recover money due on a fire insurance policy, evidence was produced, on the part of the plaintiff, that upon removal of his household goods from one town to another, he took the policy to the agent of the fire insurance company, and requested the permission of the insurance company for such removal. The agent agreed to the transfer, stipulating that the premium would be at a higher rate, to which the plaintiff agreed. The agent did not endorse the policy. Subsequently the property was destroyed by fire. The company defended on the ground that the policy was avoided by the removal of the goods under the circumstances indicated, and that the company was without liability.

*Held,* that the permission given by the agent was binding on the company and that a verdict in favor of the plaintiff would be sustained.

Where the agent was acting within the scope of his authority and took the policy for the purpose of attaching his signature to the formal consent printed on the policy, the company was estopped from denying its liability because the agent had failed to endorse such signature in writing, after having consented to the removal, and promised to do whatever was necessary to make it effective.

Argued October 26, 1921. Appeal, No. 237, Oct. T., 1921, by defendant, from judgment of C. P. Clearfield Co., Sept. T., 1920, No. 452, on verdict for plaintiff in the case of A. G. McGinness v. Caledonia Insurance Company of Scotland. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit on policy of insurance. Before BELL, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,034 and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings on evidence, the charge of the court, answers to points and refusal of defendant's motion for judgment non obstante veredicto.

*D. C. Jennings,* and with him *Smith & Smith,* for appellant.—On removal of the goods from the house where they were insured the policy ceased to cover the risk and could only be revived by an affirmative agreement: Davison v. Insurance Company, 189 Pa. 132; West Branch Insurance Co. v. Helfenstein, 40 Pa. 289; Waynesboro Mutual Fire Insurance Co. v. Conover, 98 Pa. 384; Pottsville Mutual Fire Insurance Co. v. Minnequa Springs Improvement Co., 100 Pa. 137; Beddall v. Citizens Insurance Company, 28 Pa. Superior Ct. 600; Hottner v. Aachen Munich Fire Insurance Co., 31 Pa. Superior Ct. 461.

*John J. Pentz,* and with him *W. C. Pentz,* for appellee, cited: Davison v. Insurance Co., 189 Pa. 132; Essington Enamel Co. v. G. S. Insurance Co., 45 Pa. Superior Ct. 550.

OPINION BY HEAD, J., April 17, 1922:

The plaintiff purchased a policy from the defendant company insuring against loss or damage by fire a lot

of personal property, household goods, furniture, wearing apparel and the like "while located and contained as described herein"......"all while contained in the two-story slate roof brick building and additions, adjoining and communicating, occupied as a dwelling house situated No. 19 south side Rumbarger Avenue, Dubois, Pa." During the life of the policy the plaintiff removed these goods to Leechburg, Pa., where they arrived safely, without injury or depreciation in value, and were set up in the building described and identified in the testimony hereinafter quoted. After the removal of the goods and their installation in the new premises of the plaintiff, the latter took his policy to the local agent who had countersigned and issued it and, as what then occurred between the assured and the agent becomes the vital feature of the case, we venture to quote from the testimony of the plaintiff: "I says, Mr. Crouse (the agent), I would like to transfer my policy. He says; whereabouts. I says, Leechburg, on Market Street, in a flat opposite the Post Office. He says, it will be a higher rate. I says, all right, tell me what it is and I will pay it to you. Mr. Crouse took the policy......You told him you wanted this transfer made? Yes, sir. And what did he say as to what he would do? He said he would take it and take care of it......He said he would attend to it. What was said about it (increased premium)? He just told me it would be an extra rate. I said what is it? He says I don't know. I will take care of it and pay me afterwards." The legal effect of the transaction thus described by the plaintiff becomes the controlling question in the case. A few days after the policy was thus deposited with the agent a fire occurred and the property was damaged. The defendant company maintained at the trial and in this court that the policy was avoided by the removal of the goods under the circumstances indicated and that the company was wholly without liability. It, therefore, sought a binding direction in its

favor from the trial judge and, thereafter, pressed a motion for judgment non obstante veredicto.

The defendant is a foreign company, having its general offices in the City of Edinburgh, Scotland. Its policies, duly executed, by its general manager and United States manager were delivered in blank to its local agent, who had full authority to put the same into actual operation by countersigning and delivering them to persons seeking insurance. Attached to the policy in suit and, to all others as we understand it, as it came to the local agent, was a blank form of removal to be signed by the local agent when necessity therefor should arise. It declares, as the act of the company, as follows: "Permission is hereby granted to remove the property insured by this policy to the......situate......and this policy is hereby made to cover the same property in new locality, all liability in former locality to cease from this date." This permission, so granted by the company, was again to become effective when signed by the agent who, of course, had full authority to bind the company by attaching his signature as the evidence of his assent to the removal. It may then be fairly assumed that the company contemplated the possible or probable removal of such insured goods from one location to another and the local agent was given authority, in his discretion, to assent to such removal. The act of signing was, and was contemplated to be, the sole act of the agent. The assured could do and was expected to do nothing more than present his policy to the agent and secure his assent to the act of removal. The blank form already referred to, further indicates the local agent had power to determine whether the hazard would be increased or lessened by the removal to the new locality and to fix the rate of the increase or decrease in the rate as circumstances might warrant.

Now the jury would be entirely warranted, under the evidence and the charge of the court, in finding that the plaintiff took his policy to the local agent and sought his

assent to the removal of the goods. There remained then but two things to be done in order to make the entire transaction perfectly regular under the terms of the policy. After being informed why the plaintiff came to him; why he brought his policy along; the agent gave his assent to the act of removal and took the policy. For what purpose? Clearly enough, we think, the jury might conclude, for the purpose, and, the sole purpose of formally attaching his own signature. The plaintiff testified he relied upon the agent doing what he promised to do. There seems to be no serious question about any increased or additional rate. Manifestly, if the testimony of the plaintiff were believed, it was not his fault he did not pay on that day, and the agent had authority to extend credit to him, if he chose.

It being thus reasonably clear that the agent was acting, at least, within the apparent scope of his authority, it follows the situation is precisely the same as if the transaction had occurred between the plaintiff and the president of the company at its home office. "The liability of the principal is coextensive with the agent's ostensible authority: Farmers' Mutual Ins. Co. v. Taylor, 73 Pa. 342; Hoge v. Ins. Co., 138 Pa. 66; Enamel Co. v. Fire Ins. Co., 45 Pa. Superior Ct. 550." Had this transaction actually taken place between the plaintiff and the president of the company and had that officer indicated his assent to the removal and taken the policy for the purpose of attaching his signature to the formal consent attached to the policy, would the company thereafter be estopped to deny its liability because its president had failed to attach his signature in writing after having assented to the removal and promised to do whatever was necessary to make it effective? It seems to us that to hold otherwise, would be a violation of the clear spirit of the doctrine thus declared by Mr. Justice SHARSWOOD in Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475: "The evidence offered and rejected was that the agent had told the assured that the proper endorsement

had been made on the policy. Now, such a declaration made by a duly authorized agent or officer would clearly operate as an estoppel. It lulled the party to sleep by the assurance that the conditions of the policy had been complied with and that his indemnity was secured." As we stated in Davis v. Home Ins. Co., 74 Pa. Superior Ct. 92: "The case has been cited with approval many times and its authority remains unimpaired." This court followed it in Smith v. West Branch Mutual Fire Ins. Co., 31 Pa. Superior Ct. 29; Davis v. Ins. Co., supra. We note that in both Mentz v. Ins. Co. and Davis v. Ins. Co., the agent had declared, as a fact, that he had done the thing which the policy authorized him to do, whilst in the case at bar, he took the policy and declared he would attend to it. We are of the opinion that the conduct of the agent in this case, acting within the scope of his authority, was just as much calculated to lull the plaintiff to sleep and cause him to give himself no further trouble about the subject, as if the agent had told him he had, in fact, signed the blank furnishing the written evidence of the consent he had orally given.

The case at bar is readily distinguishable from our own case of Devaney v. Northwestern National Ins. Co., 64 Pa. Superior Ct. 510, and Waynesboro Ins. Co. v. Conover, 98 Pa. 384, and the intervening line of cases following the latter. They held that it was no part of the duty nor was it within the power of a local agent to interpret and declare the legal meaning of a written clause in the policy. That being true, his declaration that the policy did not mean what it said, and the folly of the plaintiff in accepting his interpretation of the meaning of the language of the contract, could not have the effect of denying to the company the right to defend on a plain breach of the covenant of the policy. We are not here dealing with a case where a plaintiff must rely on his ability to expunge from the written contract a material covenant thereof on the ground that the company had waived its right so to do. The removal of the personal property insured in

this case from one locality to another was not in and of itself a breach of any covenant of the policy. As we have already pointed out, the general officers of the company had, in advance, assented to such removal provided the assent of the local agent could be secured, that assent being evidenced by his signature. The attaching of his signature was an act he was to perform in the discharge of the powers conferred upon him. He gave his assent to the act of removal, which surely was the substance of the thing he was to do. He promised to attach his signature so as to completely and entirely discharge his duty in the premises, he took and retained the possession of the policy, apparently for that purpose, certainly for no other disclosed by the evidence, and the plaintiff was thereby left in a false sense of security as to the condition of his insurance. Whilst we cannot deny that the case is a reasonably close one, we are all of the opinion the learned court below was right in submitting certain questions to the jury and that the manner of the submission was fully as favorable to the defendant as it had any right to expect. As a consequence, there was no error in the refusal of the trial judge to give a binding direction to the jury nor in his subsequent discharge of the rule for judgment non obstante veredicto.

As already stated, the disposition of this question practically determines the case. We are aware there have been presented a number of assignments of error for our consideration and it has been given to each and every one of them, but, we can perceive no advantage to be derived from a detailed consideration of them one by one. They are all overruled.

Judgment affirmed.