## SUSQ. MUT. FIRE INS. CO. v. W. L. ELKINS.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILADEL-
PHIA COUNTY.

Argued January 16, 1889—Decided March 11, 1889.

(a) A policy of insurance in a mutual company contained the conditions,
inter alia: That the company should not be liable thereon until the pre-
mium should be actually paid; that nothing less than a specific agree-
ment indorsed on the policy should be construed as a waiver of any
printed or written condition therein; that payment of the premium to
any person, other than the duly appointed agent of the company, should
be at the sole risk of the assured.

(b) There was also a stipulation that the policy was made and accepted
with reference to said conditions and to the by-laws of the company,
"which are hereby declared to be a part of this contract," said by-laws
providing, inter alia, that all agents should be appointed by the com-
pany under a certificate with the seal of the company affixed, without
which no person should be authorized to act as such agent.

1. In such case, although the by-laws are declared to be a part of the
contract, yet they are not part of the printed or written conditions which
could be waived only by a specific agreement indorsed on the policy,
and being made for the sole protection of the company, the company
was not bound to adhere to them.

2. Wherefore, if the company authorized one, not in fact its duly
appointed and commissioned agent, to deliver a policy and receive the
premium thereon, adopting with him a course of dealing wholly incon-
sistent with its provisions, those provisions could not be set up to pre-
vent a recovery on the policy.

3. Marland v. Insurance Co., 71 Pa. 393; Schaffer v. Insurance Co., 89 Pa.
296; Greene v. Insurance Co., 91 Pa. 387; Pottsville Mut. Ins. Co. v.
Improvement Co., 100 Pa. 137, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 20 July Term 1888, Sup. Ct.; court below, No. 342
March Term 1882, C. P. No. 2.

On March 7, 1882, William L. Elkins, trading as William
L. Elkins & Co., brought case against the Susquehanna Mutual
Fire Insurance Company of Harrisburg, Pa., to recover the
sum of $710.36, the loss apportioned to a policy of fire insurance
for $1,575 issued by the defendant company to the plaintiff.

At the first trial of the cause, there was a judgment for the defendant on a point reserved, which judgment on April 30, 1883, was reversed by this court, and a venire de novo awarded: Reported, 3 Penny. 367.   At the second trial, there was a judgment of compulsory nonsuit entered in the court below, which judgment on October 4, 1886, was also reversed by this court and a venire de novo awarded : Reported 113 Pa. 386.

The record having been remitted to the court below, the cause was again called for trial on January 5, 1887, when it was shown that in consideration of $51.98 premium and an additional deposit of $26.77 in cash, on December 10, 1880, the defendant insured the plaintiff's Belmont Oil Works to the amount of $1,575 for one year from December 1, 1880, according to the terms and conditions of the policy, some of which were as follows, to wit:

" 2. This company shall not be liable by virtue of this policy, or any renewal thereof, until the premium therefor be actually paid and the deposit is made."

" 7. The use of general terms or anything less than a distinct specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction therein."

" 12. It is expressly understood and mutually agreed, that the person or persons, if any other than the assured, who have procured this insurance to be taken by this company, shall be deemed the agent or agents of the assured and not of this company, in any transactions relating to this insurance, and if the premium on this policy shall be paid to any person or persons other than the duly appointed or authorized agent of this company, such payment shall be at the sole risk of the assured."

" And it is hereby mutually understood and agreed, by and between this company and the assured, that this policy is made and accepted in reference to the foregoing terms and conditions, and the by-laws of the company, which are hereby declared to be a part of this contract, are to be used and resorted to in order to determine the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for in writing."

Certain of the by-laws referred to were as follows, to wit:

"Sec. 10. All general and local agents or surveyors shall be appointed by the secretary, and shall be furnished with a certificate of his or their appointment with the seal of the company affixed thereto, setting forth the powers of such agents, and without said certificate no person shall be, or is, authorized to act as agent for this company."

"Sec. 24. No insurance, whether original or continued, shall be considered as binding until the cash premium shall have been actually paid to some duly authorized and commissioned agent of the company."

"Sec. 42. These, and all other by-laws hereafter adopted, shall not be abrogated, modified, or in anywise altered or added to, unless at a regular meeting of the board of directors, and all by-laws heretofore adopted by this company and inconsistent herewith are hereby repealed."

Thomas J. Lancaster, called for plaintiff, testified that he was an insurance broker, his business being to receive orders for insurance, place risks, receive the policies, deliver them to the assured, receive the premiums and to transmit them to the companies or their agents; that in 1880 and 1881 he had charge of all the plaintiff's insurance, and placed that on the Belmont Oil Works in eighteen or twenty companies; that he received the policy in suit from Robert Crane, the agent of the defendant company, and, on December 17, 1880, delivered it to the plaintiff and received a check from him for the amount of the premiums and deposits; that he afterwards received from Crane a bill or statement of the premiums, etc., due on policies issued to Elkins in three companies one of which was the policy in suit, the amounts, less commissions, aggregating $200.82, and on March 8, 1881, he gave Crane a check for $100, on account of the bill generally; and that he paid the balance of the bill on March 15th. "Crane and I," said the witness, "settled for premiums sometimes in thirty, sometimes in ninety days. He was a broker and I was a broker. I took him business and he gave me business. It depended on our accounts how I settled with Crane as the agent of this company."

The fire which injured or destroyed the insured property occurred on March 9, 1881.

Robert Crane, called for the plaintiff, testified that he was an insurance agent and broker; that in 1880 and 1881 he did

business with the defendant company. The witness proceeded: "About April, 1880, I became its agent for certain purposes. I had no certificate of appointment from the company. I never saw one. I wrote the company in reference to doing business. The secretary called to see me. It was arranged that I should send it business. In pursuance of that arrangement I sent applications for insurance, subject to their approval. All applications they approved they wrote up the policies and sent them to me as their agent or representative. They sent me the Elkins policy. I received it in December, 1880, by mail from the company. I delivered it to Mr. Lancaster, as I received the order from him, and from him I collected the premium. I received $100 on March 8th on account of my bill, and on March 15th received the balance. I charged him with all the policies I delivered. I credited the company with all the policies sent and charged myself with the premiums. I was responsible for the premiums. They looked to me for the premiums. I placed the checks of Lancaster to my credit. I sent the company my check for the balance of my account on March 16th, which they returned to me. When I received the policy, I recorded it in my register and sent it to Mr. Lancaster. I examined the applications and forwarded this one to the Susquehanna M. Insurance Company, with a description of the property. They approved it and wrote the policy. After recording it in my register, I delivered it to Mr. Lancaster and charged him with the premium. At the close of the month I sent him a bill. We, the company and I, usually settled about the 15th of the month. I have in some cases remitted to the Susquehanna M. Insurance Company before I received premiums, to close the account. I was responsible to the company for the premium or the return of the policy." On cross-examination, the witness stated that he had received a letter from Mr. Huntzinger, "informing me that the company was not keeping a general running account with me. They wrote for my account. They asked for reports and remittance of premiums. I cannot now produce the letters making these requests, but I kept an account on my books and sent statements and checks for balances."

On behalf of the defendant, B. K. Huntzinger testified that in 1880 and 1881 he was secretary of the defendant company

and had charge of the appointment of agents and of giving them instructions; "At no time was there an arrangement of Mr. Crane with our company as to business. The company never issued to him a certificate of appointment as agent. I received applications for insurance from Mr. Crane. . . . . His applications were signed by him, as agent for the applicant. . . . . It is not true that the company held Crane personally responsible for the premiums on the policies sent him. We never made any demand on him for money which he had not collected. He always remitted after he had collected. He gave us no written agreements to be responsible for uncollected premiums. . . . . The first remittance we received on account of Elkins's premium was about March 17 or 18, 1881. That is the check. We refused to accept it and returned the check to Crane. . . . . Mr. Crane did not remit on general account; he always remitted specially for certain premiums. When a check covered several premiums, the letter always stated what premiums." On cross-examination the witness testified that the company allowed Crane the usual commission of 25 per cent to all brokers who brought the company business.

At the close of the testimony, the court, FELL, J., charged the jury as follows:

I can probably best direct your attention to the law governing this case by first answering the defendant's points, which are:

1. That under the terms of the policy, the company defendant would not be liable thereon until the premium was actually paid and the deposit made by the plaintiff, and that there is no evidence in this case that the premium was so paid or deposit made, and therefore the policy never took effect, and the plaintiff cannot recover.

Answer: I decline to so instruct you.[1]

2. That under the terms of the policy in suit the payment of the premium thereon to any person, other than the duly appointed or authorized agent of the company, was at the sole risk of the assured, and the company was not made liable by such payment.

Answer: I affirm this point.

3. That there is no evidence that either Lancaster or Crane was the duly appointed or authorized agent of the company, or acted in any other capacity than that of a broker, in effecting the insurance in question; and therefore, both in law and under the terms of the policy, they were the agents of the plaintiff and not the agents of the defendant.

Answer: There is no testimony showing that Lancaster was the agent of any one, except of the plaintiff, Elkins. But there is evidence that Crane represented the company in some capacity. What that was, and what were its scope and extent, are the questions which you must decide.[2]

4. That there is no evidence in this case that Robert Crane was authorized to bind the company defendant by the acceptance of the premium upon the policy, after the occurrence of a loss.

Answer: I affirm this point.

5. That the plaintiff is bound by the provisions of the by-laws of the company defendant, which are made by the policy a part of the contract.

Answer: I affirm this point.

6. That by the provisions of the by-laws of the company defendant no person is authorized to act as agent for said company without having been furnished with a certificate of appointment with the seal of the company affixed thereto setting forth the powers of such agent; that the evidence in this case is that Robert Crane had no such certificate, and therefore he was not authorized to act as agent for said company and could not bind it in any way.

Answer: As I have said, there is testimony that Crane was authorized to act for the company in some respects; to forward applications, to receive and deliver policies and to collect the premiums. If his authority was given verbally and they ratified what he did under it, they would be bound by it. They cannot accept the benefit and refuse the burden.[3]

7. That the plaintiff was bound to inform himself as to the authority of the person with whom he was dealing, and the company defendant cannot be held liable for the unauthorized acts of a third party.

Answer: I affirm this point.

8. That, where a party seeks to avail himself of the acts of

an alleged agent, the burden of proof lies on him to establish both the agency and the extent of it.

Answer: I affirm this point.

9. That the condition of the policy in suit, which provides that nothing less than a distinct specific agreement, clearly expressed and indorsed on the policy, can be construed as a waiver of any printed or written restriction therein, was binding upon the plaintiff, whether the alleged waiver was by an officer or agent of the company.

Answer: Mr. Crane, if agent, had no authority to waive any condition in the policy, but the company could waive a condition as to prepayment inserted for its own benefit, and such waiver need not be written nor indorsed on the policy.[4]

10. That under all the evidence in this case, the verdict of the jury must be for the defendant.

Answer: I decline to so instruct you.[5]

11. The payment of the premium by the plaintiff to Lancaster, his own broker and agent, was not a payment to the company defendant, nor to any agent of the defendant, and such payment was not a compliance with the condition of the policy, requiring actual payment of the premium to the company or its agent before the policy should be binding upon the defendant.

Answer: I affirm this point.

12. Even if the jury is satisfied that Crane was the agent of the defendant to collect the premium, the evidence is distinct and uncontradicted, to the effect that he had no authority to waive any of the conditions of the policy; and inasmuch as the testimony shows conclusively that the premium was not actually and fully paid to him until after the fire, the plaintiff cannot recover.

Answer: I decline to so instruct you.[6]

13. Before the plaintiff can recover upon the theory that Crane had obligated himself to pay the premium to the company, and that the company had agreed to accept Crane's personal credit instead of the actual payment in cash, he must show that Crane had made himself legally responsible to the company for the premium, and as such legal responsibility, under the statute of frauds, can only be established by a memorandum in writing, which it is not pretended was ever given

by Crane to the defendant, the plaintiff cannot recover upon any such theory as is suggested in this point.

Answer: I decline to instruct as requested in this point.[7]

14. Before the plaintiff can recover upon the theory that the company had agreed to accept Crane's credit instead of actual payment of the premium as required by the policy, he must show by a preponderance of evidence that Crane, for some good consideration, had made himself personally and legally responsible for payment of the premiums upon policies which he delivered to the assured, and that the company had agreed to accept his personal legal responsibility, in lieu of actual payment; and unless the jury is satisfied that this fact is established by a preponderance of evidence in the present cause, the verdict, so far as this branch of the case is concerned, should be for the defendant.

Answer: I affirm this point.

15. Before the plaintiff can recover upon the theory suggested in the foregoing point, he must, in addition to the facts therein suggested, establish the fact that Elkins, the plaintiff, or his broker, Lancaster, had notice of the alleged arrangement by which Crane's credit was to be accepted in place of actual payment, and that they relied upon the same in withholding the actual payment until after the fire.

Answer: I affirm this point.

This is an action on a policy of insurance issued by the defendant, the Susquehanna Mutual Fire Insurance Company, to William L. Elkins. The policy is dated December 10, 1880, and is for $1,575. The fire occurred March 9, 1881, and the loss apportioned to this policy is $710.36. There is no dispute about this, and the only question is whether the policy bound the company.

Mr. Lancaster and Mr. Crane were both insurance brokers, and [Mr. Crane represented for some purpose, at least, the Susquehanna M. Insurance Company][8] and Mr. Lancaster represented Mr. Elkins for the purpose of procuring insurance. Lancaster applied for and received the policy in question some time after its date, December 10th, and delivered it to Mr. Elkins on December 15th, and on the 17th he was paid for it by Mr. Elkins. He had a running account with Mr. Crane for premiums on policies received, and on the 8th of March, the

Charge of Court below.

day before the fire, sent him a check for $100, and on the 15th a check for the balance, closing the account.    March 16, 1881, Mr. Crane sent a check to the company, which paid them for this policy in full, but which they declined to receive.

Mr. Lancaster was clearly the agent of Mr. Elkins in the transaction, and his failure to pay was the failure of his principal.    Mr. Crane gave credit to Mr. Lancaster, and the case turns to his, Mr. Crane's, relation to the company.

The policy contained this stipulation : " This company shall not be liable by virtue of this policy, until the premium therefor be actually paid."    This stipulation was for the benefit of the company, and the company could waive it, if it desired to do so.

[If the company, notwithstanding this condition, had delivered the policy to Mr. Elkins or Mr. Lancaster, without payment, and accepted in lieu thereof the promise of either to pay in the future, either at a fixed time or on the settlement of their mutual account, the policy would have been in force. This is what Mr. Crane did.    Had he authority from the company to do this ?].⁹

Lancaster had a running insurance account with Mr. Elkins, settled every three months.    Crane had a running insurance account with Lancaster, settled at their convenience.    The company had an account with Crane of this nature.    They received from him applications and accepted or rejected them as they saw best.    They sent him policies, on which he was to collect premiums or return the policy.    He sent statements with remittances each month.    He says he marked those not paid and sometimes advanced small premiums.    Sometimes he was in their debt and sometimes they were in his.    There is a dispute as to his relations to the company and the course of business between them.    The truth of the matter you must determine from the testimony.

[If the company agreed to substitute the personal liability of Mr. Crane for the security which this clause of the policy afforded, and to dispense with the requirement that the premium should be prepaid, the policy was in force at the time of the fire ; otherwise, it was not.] ¹⁰

The jury returned a verdict in favor of the plaintiff for

$959.36. A rule for a new trial having been refused, judgment was entered on the verdict, when the defendant took this writ and assigned as error:

1–7. The answers to the defendant's points.[1 to 7]

8–10. The parts of the charge embraced in [ ] [8 to 10]

*Mr. James C. Sellers* (with him *Mr. David Fleming* and *Mr. S. J. M. McCarrell*), for the plaintiff in error:

1. It is submitted that under the evidence and the authorities it was the plain duty of the court to affirm the defendant's first point, which squarely raised the defence. The undisputed facts bring the case directly within the doctrine that the company, notwithstanding the delivery of the policy, had the right to rest upon the positive provision contained in it, that it was not to be binding until the actual payment of the premium; that the agent, having no written authority, could not waive the condition requiring prepayment; and that the brokers through whom the application was made, were agents of the assured and not of the company: Marland v. Insurance Co., 71 Pa. 393; Schaffer v. Insurance Co., 89 Pa. 296; Greene v. Insurance Co., 91 Pa. 387; Pottsville M. Ins. Co. v. Improvement Co., 100 Pa. 137. Nor would part payment of the premium render the company liable. A person cannot recover for part performance of an entire contract, when he has failed in entire performance on his part: Martin v. Schoenberger, 8 W. & S. 367; Shaw v. Turnpike Co., 2 P. & W. 454.

2. The conditions of the policy were not to be held as waived by indefinite conversations between the secretary of the company and Crane, of which neither Elkins nor Lancaster had knowledge. But granting the possibility of a parol waiver of a condition, can an officer of a corporation thus dispense with a by-law, part of the fundamental law of the corporation? Such a decision would be disastrous. Moreover, the company defendant was a mutual company, and its members are bound to be informed of its by-laws: Susq. Ins. Co. v. Perrine, 7 W. & S. 348; Mitchell v. Insurance Co., 51 Pa. 402; Diehl v. Insurance Co., 58 Pa. 443; Lycoming M. Ins. Co. v. Sailer, 67 Pa. 108; Underwriter's Ass'n v. George, 97 Pa. 238; Lycoming F. Ins. Co. v. Storrs, 97 Pa. 354; Crawford Co. M. Ins. Co. v. Cochran, 88 Pa. 230. And again, it is not pre-

tended that the company ever held Crane out to Elkins or Lancaster as its agent. A party who avails himself of the acts of an agent, in order to charge the principal, must prove the authority and the extent of it: Hays v. Lynn, 7 W. 524; Moore v. Patterson, 28 Pa. 505; Underwriter's Ass'n v. George, supra; B. & O. Em. Relief Ass'n v. Post, 122 Pa. 579.

3. The defendant's ninth point, which was, in effect, that the condition as to waiver was binding, whether the alleged waiver was by an officer or an agent, it is submitted, was a correct proposition of law and should have been affirmed totidem verbis. "The parties have so agreed, and the courts have no right to alter the agreement of the parties in this respect, or in any other. Solemn contracts of parties, reduced to writing and duly executed, would have little value if their provisions could be arbitrarily set aside and disregarded by the tribunals:" Waynesboro M. F. Ins. Co. v. Conover, 98 Pa. 384; Pottsville M. Ins. Co. v. Improvement Co., 100 Pa. 137; Universal M. F. Ins. Co. v. Weiss, 106 Pa. 20. There is no reason why the contract of the parties should not stand as written. There is no pretence of either fraud, accident or mistake. To affirm the present judgment would have the effect to strike out of a written contract stipulations to which the parties have mutually agreed, and to repeal a corporation's by-laws by a judicial decree.

*Mr. Alex. P. Colesberry* and *Mr. Charles B. McMichael* (with them *Mr. Frank R. Shattuck*), for the defendant in error:

1. The rule laid down in Marland v. Insurance Co., 71 Pa. 396; Schaffer v. Insurance Co., 89 Pa. 296; Pottsville M. Ins. Co. v. Improvement Co., 100 Pa. 137, does not apply here, because in none of these cases was there payment of the premium to the company or its agent. The whole case at bar turned about one single point: Was Crane the agent of the company, and what was the extent of his authority? The extent of an agent's authority is a question for the jury: Shelden v. Insurance Co., 25 Conn. 207; Hough v. Insurance Co., 29 Conn. 10 (76 Am. Dec. 587); Farmers M. Ins. Co. v. Taylor, 73 Pa. 342.

2. An insurance company may waive any condition inserted in its policy for its benefit; and, as the company may at any time give authority to its agents to make agreements, or to waive forfeitures, it is not bound to act upon the declaration in its policy, that they have no authority: Relief F. Ins. Co. v. Shaw, 94 U. S. 574; Miller v. Insurance Co., 12 Wall. 286; Commercial Ins. Co. v. Insurance Co., 19 How. 318; Insurance Co. v. Ball, 20 Wall. 560; Riley v. Insurance Co., 110 Pa. 144.

3. Even where there is a requirement in the policy that agents shall not deliver a policy until they have exacted a cash premium, general agents have power to waive such a requirement: Miller v. Insurance Co., 12 Wall. 286; and where, from the facts of the case, it is to be inferred that a credit is intended, the policy will be valid although the premium has not been paid: Boheen v. Insurance Co., 35 N. Y. 131; Goit v. Insurance Co., 25 Barb. 189; Trustees v. Insurance Co., 19 N. Y. 305; Sheldon v. Insurance Co., 26 N. Y. 460 (84 Am. Dec. 213).

OPINION, MR. JUSTICE CLARK:

This suit is upon a policy issued by the defendants, December 10, 1880, to William L. Elkins & Co. against loss by fire on the Belmont Oil Works, to the amount of $1,575. The contract covered a term of one year from December 1, 1880; the fire occurred March 9, 1881, and the loss apportioned to this policy is $710.36; as to this there is no dispute.

The policy contained stipulations that the company should not be liable on the policy, or on any renewal thereof, until the premium therefor was actually paid, and the deposit made; that if the premium was paid to any person, other than the duly appointed or authorized agent of the company, such payment should be at the sole risk of the assured, and that nothing less than a distinct specific agreement, clearly expressed and indorsed on the policy, should be construed as a waiver of "any printed or written condition or restriction therein."

The policy was sent to Crane for delivery to Elkins; the secretary himself says that Crane had the right to deliver the policy, and to collect the premium; to this extent, at least, Crane represented the company, for the contract was incom-

plete until the policy was delivered. Mr. Crane testifies, however, that he was the agent of the company for certain purposes. He says, the secretary called to see him, and it was arranged that he should send business to the company; that, in pursuance of the arrangement, he did send applications for insurance, subject to their approval; that they wrote up the policies and sent them to him, as their agent and representative; that it was part of the understanding that he was personally liable to the company for the premiums on policies sent to him, and that the company looked to him for these premiums, or for a return of the policies; that he credited the company in an account with the policies received, or charged himself with the premiums, and that the company and he settled about the 15th of every month. All this was explicitly and positively denied by Huntzinger, the secretary of the company, who says that Crane was not the agent of the company for any purpose whatever; but the veracity of the witnesses and the conflict in the testimony was for the jury, and, adopting the verdict as a finding of the fact, it cannot now be questioned that Crane was an agent of the company, " duly appointed or authorized," to deliver the policy and receive the premium.

But the company has offered in evidence certain by-laws of the company, with reference to which the policy was made and accepted, as follows :

" Sec. 10. All general and local agents or surveyors shall be appointed by the secretary, and shall be furnished with a certificate of his or their appointment, with the seal of the company affixed thereto, setting forth the powers of such agents, and without said certificate no person shall be, or is authorized to act as agent for this company."

" Sec. 24. No insurance, whether original or continued, shall be considered as binding until the cash premium shall have been actually paid to some duly authorized and commissioned agent of the company."

" Sec. 42. These, and all other by-laws hereafter adopted, shall not be abrogated, modified, or in anywise altered or added to, unless at a regular meeting of the board of directors ; and all by-laws heretofore adopted by this company and inconsistent herewith are hereby repealed."

Whilst these by-laws are declared to be part of the contract,

they are not any part of the " printed or written conditions or restrictions therein," which, according to the seventh condition of the policy, can be waived only by a distinct, specific agreement, clearly expressed and indorsed on the contract; the seventh condition of the policy plainly refers, and refers only, to a waiver of any condition, printed or written, in the body of the policy. If Mr. Crane therefore was an agent of the company, " duly appointed and authorized " to receive premiums on policies delivered by him, it involved no waiver of any condition, contained in the policy itself, to bind the company by his act in so doing.

It is argued, however, that as the company is a mutual company, the plaintiffs are presumed to be acquainted with the by-laws, and therefore had notice by the 24th section, that his insurance was not binding until the cash premium was actually paid to some duly authorized and commissioned agent of the company. The by-laws were made, however, solely for the protection of the company, and, as we said when the case was here before, the company was not bound to adhere to them. If they chose to dispense with the protection thus offered, it was competent for them to do so. If the company had issued this policy to Elkins, and expressly agreed to give him time on the payment of the premiums, taking his promissory note for the amount thereof, payable at a future day, it would not be pretended, we think, that because the premium was not actually paid, there was no liability in case of loss, during the period of credit. Or, if the company had placed the policy in the hands of some person expressly for delivery, with instructions to receive the premiums, and the premium was paid and the policy delivered accordingly, it would certainly not avail the company anything, in case of loss, that the premiums had not been paid to " a duly authorized and commissioned agent of the company." These by-laws were made solely in the company's interest, and it was competent for the company in a particular case to waive strict adherence thereto.

If, notwithstanding these by-laws, the company actually authorized Mr. Crane to act for them in delivering this policy, in receiving premiums thereon, and adopted a course of dealing with him wholly inconsistent with its provisions, they cannot now set them up to prevent the plaintiff's recovery. This case

is readily distinguishable from Marland v. Royal Ins. Co., 71 Pa. 393 ; Schaffer v. Mut. Fire Ins. Co., 89 Pa. 296 ; Greene v. Lycoming Ins. Co., 91 Pa. 387 ; and Pottsville Ins. Co. v. Improvement Co., 100 Pa. 137, cited and relied upon by the plaintiffs in error. In each of these cases, the company rested upon the positive provision of the policy, that it was not to be binding until the actual payment of the premium, and in none of them was the premium paid, or pretended to be paid, either to the company or to any of its agents. In this case, however, the agency of Crane was established by proofs satisfactory to the jury, and there was evidence from which the jury was justified in inferring that the company authorized the delivery of the policy and accepted the responsibility of their agent, in lieu of the security afforded by this provision of the policy.

The judgment is affirmed.