## BANKERS' RESERVE LIFE CO. v. SOMMERS. (No. 8692.)

(Court of Civil Appeals of Texas. Dallas. May 27, 1922. Rehearing Denied June 24, 1922.)

**1. Insurance ⊜361—General agent did not have apparent authority to accept jewelry or other property in payment of premium.**

General agent of insurance company, authorized to deliver policy and collect first premium, did not have apparent authority to accept in payment of the premium jewelry or other property other than money; his authority being limited to the acceptance of money or its equivalent, such as notes executed for and accepted in payment of premium.

**2. Insurance ⊜375(1)—General agent not authorized to waive payment of premium in money.**

The authority of a general agent of an insurance company to waive provisions requiring the payment of the premium in advance, in cash, and to extend the time of payment, did not include the authority to waive the payment of the premium in money.

**3. Insurance ⊜646(1)—Insured's possession of policy at time of death creates presumption that it had been properly delivered to him at the performance of all conditions.**

Insured's possession of life policy at time of his death raised presumption that it had been properly delivered to him after performance of all conditions precedent necessary to put policy in force, requiring insurer to rebut such presumption by proof showing that policy had not been delivered for the purpose of taking effect as a binding obligation.

**4. Insurance ⊜141(2)—Unconditional delivery of policy operated as a waiver of the prepayment of premium.**

Where the contract of insurance was complete with the exception of the prepayment of the premium, the unconditional delivery of the policy to the insured operated as a waiver of the prepayment of the premium, though policy expressly provided that insured should not be liable until the premium should have been actually paid in cash, and on such delivery the policy became a binding obligation, and remained such where not canceled by insurer, notwithstanding that insurer under such circumstances had the right to cancel the policy for nonpayment of premium on demand therefor.

**5. Insurance ⊜229(1) — Insurer could not cancel policy for nonpayment of premium after delivery without notice to insured.**

Where insurer delivered policy without payment of premium, notwithstanding provision that insurer should not be liable until premium should have been actually paid in cash, the insurer could cancel the policy for nonpayment of the premium subsequent to delivery, but only after demand on insured for payment thereof and default in payment of premium after such demand.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by Mrs. Belle Trott Sommers against the Bankers' Reserve Life Company. Judgment for plaintiff, and defendant appeals. Affirmed.

J. W. Gormley and Thomas, Frank, Milam & Touchstone, all of Dallas, for appellant.

Pope & Young and Liveley & Dougherty, all of Dallas, for appellee.

VAUGHAN, J. Appellee sued the appellant upon a life insurance policy made payable to her, and alleged to have been issued by appellant company upon the life of Lawrence E. Sommers, her husband, on or about August 22, 1918, in the amount of $5,000.

Appellee in part alleged:

That "on or about August 22, 1918, she was the wife of Lawrence Edwin Sommers; that defendant on said date, in consideration of the payment by said Lawrence Edwin Sommers to the defendant of the sum of $92, and of the payment by said assured of a like sum annually as provided in the policy, during the continuance thereof, made, executed, and delivered to the said Lawrence E. Sommers, deceased, policy of insurance in writing whereby it insured the life of said Lawrence E. Sommers in the sum of $5,000 for the benefit of plaintiff. * * * That said Lawrence E. Sommers died on the 20th day of October, 1918, and at the

time of his said death the first annual premium had been duly paid, the application of said deceased for insurance duly approved by defendant, and the policy in question executed, mailed, and delivered to the said Lawrence E. Sommers, deceased, and that the said assured at the time of his death had in all respects complied with the conditions and provisions of said policy. * * * That defendant has failed and refused to furnish plaintiff with forms for proof of death, and fails and refuses to recognize the existence of said policy or contract of insurance, and fails and refuses to pay the amount of said policy to plaintiff as beneficiary, or any part thereof, but the defendant denies any and all liability, and thereby waives filing of proofs of death or loss as provided in said policy, and is now justly indebted to plaintiff in said sum of $5,000 and interest thereon."

Appellant by its first amended original answer presented in part its defense against appellee's cause of action as follows:

"And here and now pleading in its own behalf more affirmatively defendant avers that on or about August 10, 1918, said Lawrence Edwin Sommers made application to defendant herein for the issuance of a policy upon his life in the amount of $5,000. That said application was made in writing on the usual form prepared and used by defendant in such instances, which form as duly filled out and signed by said Lawrence E. Sommers will be produced upon the trial of this cause; that in particular said application form thus signed by said Lawrence E. Sommers contained the following clause: 'That under no circumstances shall the insurance hereby applied for be in force until payment in cash of the first premium, while the applicant is in good health, and delivery of the policy to the applicant in person, during his lifetime and while in good health.' That said application thus signed, also contained the clause: 'I agree to pay premiums of $92 on this insurance annually, according to the company's rates, subject to the condition of the policy.'

"Defendant avers: That the policy thus applied for in writing by said Lawrence Edwin Sommers was duly made out in its home office at Omaha, Neb., August 22, 1918. That a photostatic copy of said written application was attached thereto. That said policy contained a recital that the same was issued 'in consideration of the application for this policy, which is hereby made a part of this contract, and of an advance premium of $92 to be actually paid in cash before the delivery thereof.' That said policy contained the further clause: 'No person other than the president or secretary shall have authority to make, alter or discharge this contract, or to modify or extend any of its terms, conditions or provisions, either before or after its issue or delivery. No statement, promise, estimate, representation or waiver of any of the terms, provisions or conditions herein shall be binding upon the company unless written or printed in the policy and duly signed by said president or secretary' —and also the further clause that the just quoted provisions was made a part of said insurance contract.

"Defendant avers that said policy with said copy of application therefor was in due course transmitted to its Dallas Agent to be delivered to said Lawrence E. Sommers by said Agent in person, provided that said Lawrence E. Sommers should be at such time in good health and should prepay said premiums of $92 in cash as in said application agreed and specified.

"Defendant avers that, although said policy was duly received by its said Dallas agent, the latter did not deliver the same to said Lawrence E. Sommers, and made no attempt to deliver the same, because he knew that at said date the health of said Lawrence E. Sommers had ceased to be in that good state in which it was at the time he applied for said policy, and which said application required as a condition precedent to the delivery of said policy.

"Defendant avers that, if said Lawrence E. Sommers obtained possession of said policy at any time, said possession was not obtained by delivery from its agent, who did not thus deliver it or even intend to deliver it.

"Defendant avers further that, if said Lawrence E. Sommers thus unknown to it obtained possession of said policy, he wholly failed to prepay the said first premium of $92, in cash, as he agreed in said application, and as stipulated in said policy."

Appellee replied to said amended answer by supplemental petition in part, alleging in section 6 thereof:

That "at the time the said policy reached the agent of the defendant in Dallas, Tex., the said Lawrence E. Sommers was in good health and about his business and that the said policy was by the duly constituted agent of the defendant, to wit, J. E. McLemore, delivered to the said Lawrence E. Sommers; that at the time of making the application for said insurance there was an agreement between Lawrence E. Sommers and J. E. McLemore whereby the said J. E. McLemore agreed with the said Lawrence E. Sommers, who, at the time of making said application, was in the jewelry business in the city of Dallas, that he, the said J. E. McLemore, would trade out the first premium for said policy, and that the said agreement was further reiterated by the said J. E. McLemore at the time of the delivery of said policy to the said Lawrence E. Sommers, and said policy was delivered in consideration of goods sold and delivered to said J. E. McLemore, and plaintiff alleges, as a matter of fact, that the said J. E. McLemore did purchase under said contract and agreement, on the 19th day of August, 1918, a watch charm at the price of $15, which was to be applied as a credit upon said premium in the event said policy should be issued by the defendant company, and that thereafter, to wit, on September 2, 1918, in further conformity with said agreement and contract by said J. E. McLemore, the said J. E. McLemore purchased of and from the said Lawrence E. Sommers a watch for the sum of $17.50, and this plaintiff says that the said watch and charm were, in accordance with said contract, sold and delivered to said J. E. McLemore at a reduced price and in conformity to the contract made by and between the said J. E. McLemore and the said Lawrence E. Sommers; and this plaintiff further alleges that, under the said contract and agreement by and between the said Lawrence E. Sommers and the said J. E. McLemore, as agent of the said company, the said Lawrence E. Sommers was only to pay the

company the net premium due the company in the sale of jewelry or trade by and between the said Lawrence E. Sommers and the said J. E. McLemore as aforesaid; that she is informed and believes that the amount so sold and delivered by said Lawrence E. Sommers to the said J. E. McLemore, as hereinabove specifically set out, was of a reasonable value greater than the net premium in said policy, and she further alleges that she is informed and believes that the said J. E. McLemore delivered said policy to said Lawrence E. Sommers, and at the time of delivery thereof waived the payment of first premium in cash, in consideration of the said Lawrence E. Sommers selling and delivering to him the said jewelry under said contract and agreement, as aforesaid, and that, by reason of the contract between the said J. E. McLemore and the said Lawrence E. Sommers, the said J. E. McLemore became responsible for and bound to pay the said defendant the net premium due and payable to the defendant company by reason of the delivery of the policy; * * * that the secretary of said defendant company, through the agent of the defendant, to wit, J. E. McLemore, fully authorized the delivery of the said policy, to wit, No. 42961, for $5,000, and that the said J. E. McLemore did deliver the said policy to the said Lawrence E. Sommers long prior to his death, and while the said Lawrence E. Sommers was in good health and in good insurable condition; that said policy is a valid and existing claim and is justly due and owing to this plaintiff by the defendant."

Trial of said cause was had March 16, 1921, the case being submitted to the jury on special issues, and answered by them as follows:

"Special Issue No. 1. Do you find and believe from the evidence that policy No. 42961, upon which this suit is based, was delivered to Lawrence E. Sommers, during his lifetime, by the defendant or its duly authorized agent? Answer 'Yes' or 'No.' Answer: Yes.

"Special Issue No. 2. If you have answered 'Yes' to the foregoing issue, then you will answer this issue: 'Was the first year's premium on the said policy paid the defendant or its duly authorized agent?' Answer 'Yes' or 'No.' Answer: Yes.

"Special Issue No. 3. Do you find and believe from the evidence that J. E. McLemore, as agent of the defendant, agreed with Lawrence E. Sommers to accept in payment the first year's payment on the policy any sum less than the amount stipulated in the face of the policy in controversy? Answer 'Yes' or 'No.' Answer: Yes.

"Special Issue No. 4. If you have answered the preceding issue in the affirmative then you will answer this question: 'What premium, if any, did said McLemore agree to accept?' Answer: 40 per cent.

"Special Issue No. 5. Do you find and believe from the evidence that there was any agreement between J. E. McLemore, as agent of the defendant, and the deceased, Lawrence E. Sommers, that said Sommers was to pay for and the said agent was to accept the first year's premium on said policy in anything other than cash? Answer 'Yes' or 'No.' Answer: Yes.

"Special Issue No. 6. If you have answered the foregoing issue in the affirmative, or 'Yes,' then what did said McLemore, as agent, agree to accept? Answer: Jewelry.

"Special Issue No. 7. Do you find from the evidence that J. E. McLemore, as agent, agreed with Lawrence E. Sommers to waive any part of the commission to which he (J. E. McLemore) was entitled as agent in payment of the first premium on the policy in suit? Answer 'Yes' or 'No.' Answer: Yes.

"Special Issue No. 8. Do you find and believe from the evidence that Lawrence E. Sommers obtained possession of the policy of insurance in controversy with the knowledge or consent of the defendant or its duly authorized agent? Answer 'Yes' or 'No.' Answer: Yes.

"Special Issue No. 9. Was the policy No. 42961, upon which this suit is based, delivered to Lawrence E. Sommers during his lifetime? Answer 'Yes' or 'No.' Answer: Yes.

"If you have answered the foregoing question in the affirmative, then was the said Lawrence E. Sommers in good health at the time of such delivery? Answer: Yes.

"Special Issue No. 10. Was there any intent on the part of J. E. McLemore to make delivery of the policy to Lawrence E. Sommers at the time he (Sommers) came into possession of it? Answer 'Yes' or 'No.' Answer: Yes.

"Special Issue No. 11. State what jewelry, if any, was purchased by J. E. McLemore from Lawrence E. Sommers? Answer: One charm and one watch.

"Special Issue No. 12. What sum would be a reasonable attorney's fee for the prosecution of the loss, if any, under the terms of said policy? Answer: $750."

On motion of plaintiff, judgment was entered for her on said special issues for the full amount of the policy, with interest thereon from November 19, 1918, together with statutory penalty and $750 attorney's fees, totaling $7,061.22, from which judgment this appeal is prosecuted.

By first supplemental answer appellant addressed general and special exceptions to said paragraph 6 of appellee's first supplemental petition, which were overruled. The action of the court in this respect is challenged by appellant.

[1, 2] The facts alleged in said section 6 did not constitute the payment of the premium as contracted to be paid by the assured, to wit, the payment of the premium in advance, in cash, on or before the delivery of the policy of insurance, as the authority of McLemore as general agent of appellant to deliver the policy and collect the first premium on same did not confer upon him the right or implied authority to accept in payment of said premium jewelry or any other character of property; his authority in this respect being limited to the acceptance of money or its equivalent, which, under certain conditions not here necessary to be discussed, may include notes executed for and accepted in payment of such premium. The power of McLemore as general agent of appellant to waive provisions requiring payment of premium in advance in cash, and to extend time of

payment of such premium, did not include the authority to waive payment of the premium on said policy in money, and he was not acting with the apparent scope of his authority in agreeing to take jewelry in lieu thereof, being neither money nor an agreement to pay money, nor equivalent to money to appellant when taken. Equitable Life Assurance Society v. Cole, 13 Tex. Civ. App. 486, 35 S. W. 720; Belton Compress Co. v. Belton Brick Mfg. Co., 64 Tex. 337; Stember & Co. v. Keene (Tex. Civ. App.) 152 S. W. 663; Holmes v. Tyner (Tex. Civ. App.) 179 S. W. 887; 1 Joyce on Ins. (2d Ed.) § 74a; Tomsecek v. Travelers' Ins. Co., 113 Wis. 114, 88 N. W. 1013, 57 L. R. A. 455, 90 Am. St. Rep. 846.

Said general exception was well taken, and should have been sustained.

Appellee's pleadings, eliminating said section 6, apparently justify the conclusion that her right to recover was made to depend entirely upon proving the allegation that all the required conditions precedent to said policy of insurance becoming effective had been actually performed by assured. This, because said exceptions should have been sustained, will not suffice to cast appellee in this appeal provided her pleadings, thus pruned, are sufficient to present a cause of action on the ground that said policy was by appellant unconditionally delivered to assured with knowledge of the facts upon which its validity was disputed, and provided, further, that the verdict of the jury disposed of such issues, and was authorized and supported by the evidence.

In the further discussion of the case special issues Nos. 2, 3, 4, 5, 6, 7, and 11, and the answers of the jury thereto, will not be noticed as no effect will be given same in the conclusion reached by us.

With said section 6 eliminated, appellee's pleadings were not further subject to general demurrer, and the facts alleged show a liability on the part of appellant insurance company, in that the application for the policy of insurance was duly and properly made by Lawrence E. Sommers, the assured, forwarded to appellant, and, on being considered, was approved; that the policy of insurance was issued on or about August 22, 1918, and unconditionally delivered by appellant to the assured on or about the 11th day of September, 1918, and that he died on or about October 20, 1918, said policy being then in full force and effect, and that appellee was the beneficiary therein named.

Considering said section 6 as stricken from her pleadings, there remain sufficient allegations on which to base a judgment for appellee. Wagner v. Ins. Co., 92 Tex. 549, 50 S. W. 569; Berliner v. Travelers Ins. Co., 121 Cal. 451, 53 Pac. 922.

In answer to special issues Nos. 1, 8, 9, 10, and 12, the jury found from the evidence that the policy sued upon was delivered to Lawrence E. Sommers during his lifetime by appellant or its duly authorized agent; that Lawrence E. Sommers obtained possession of said policy of insurance with the knowledge or consent of the appellant or its duly authorized agent; that said policy of insurance was delivered to Lawrence E. Sommers during his lifetime, and that he was in good health at the time of such delivery; and that it was the intention on the part of J. E. McLemore to make delivery of said policy to said Lawrence E. Sommers at the time he (Sommers) came into possession of it; that $750 would be a reasonable attorney's fee for the prosecution of suit to recover in behalf of appellee under the terms of said policy.

It was established by uncontroverted evidence that J. E. McLemore was the general agent of the appellant prior to and at the time the assured, Lawrence E. Sommers, made application for the policy of insurance sued upon, and continued as such general agent during all of the transactions involving said policy, viz. the application for the policy, the issuance of same by appellant, and the delivery thereof to the assured; that under his employment to represent and act for appellant he had the authority to appoint agents to solicit applications for insurance, receive and deliver policies of insurance when issued by appellant, and to collect premiums to be paid on delivery of such policies; that said policy of insurance was delivered to the assured, Lawrence E. Sommers, on the 2d day of October, 1918, by appellant insurance company or its agent; that said insurance policy remained continuously in the possession of assured until his death, which occurred on or about the 20th day of October, 1918; that during the period from October 2, 1918, to October 20, 1918, demand was made on said Lawrence E. Sommers, the assured, for the payment of the premium in the sum of $92; said payment was not made and said policy was not canceled by appellant on account of failure to pay said premium when demanded; that said policy was unconditionally delivered into the possession of the assured, Lawrence E. Sommers. At the time said policy was delivered, the officer or agent acting for appellant in the delivery of same did so with full knowledge of the facts upon which its validity was disputed by appellant.

In reference to the delivery of the policy said McLemore, the general agent of appellant, testified:

"I had a conversation with Lawrence E. Sommers between the time I took his application for the policy on the —— day of August until I got the policy from the home office, and about insurance in general; I do not remember that I talked any about his policy; he might have inquired if it had arrived yet, and I might

have said 'No.' I do not remember anything about his policy. * * * I put it in my tickler with the rest of them, in a wooden box where I keep the policies. I did nothing else; just left it there; it stayed there quite a while, I don't know; I don't know what finally became of it; it is only conjecture; when I saw it last it was in Sommers' hands in my office; I was explaining it to him for two reasons; one was teaching him the business, the contract, and another because it was his property, and it ought to be explained to him. * * * I said nothing about the premium; I don't think I told him anything about the amount at that time; he could see that on the face of it. I told him here was his policy when he was able to come and pay for it. Evidently I didn't do anything with the policy after I finished talking about it; I don't know even yet what became of it; I didn't possess it any longer; it got away at that time, evidently. I suppose he walked out of there with it. * * * My records show in reference to the disposition of this policy it was returned to the home office. That record states the facts. This is the policy, here. It could have been to the home office and back here. I do not know that, when it was sent to the home office, the home office sent it to Lawrence E. Sommers; I don't know that. It might have done it. I haven't anything in my files that would indicate that that procedure was taken. I haven't any additional letters or communications on my own part. I do not know how he got it. I do not know where it came from. It is the one that I got, I think."

Said witness further testified, referring to the record of policies kept in his office:

"Under the column 'What date lapsed' is 'J. E. M.'? and I answered, 'That is meant to be me; I wrote it, "Date lapsed." I just sent it back; it didn't lapse. Lapse is a term which occurs after the first year—two, three, four, or five years. This indicates that the policy was returned to the home office and J. E. M. wrote that.'"

[3] The possession of the policy of insurance by the assured at the time of his death raised the presumption that same had been properly delivered to him after he had performed all conditions precedent necessary to put said policy in force, and the burden was upon appellant to displace or rebut such presumption by proof showing that same had not been delivered for the purpose of taking effect as a binding obligation against appellant. Otherwise the presumption that the possession of the policy was rightfully acquired will continue throughout the case. Jones v. N. Y. Life Ins. Co., 168 Mass. 245, 47 N. E. 92, in which it was held:

"Such a document is not ordinarily found in the custody of the assured unless it belongs to him as a contract that may be enforced according to its terms. Possession by the assured is evidence that everything has been done that need be done to give it validity."

This, we think, is applicable to the instant case.

The appellant signally failed in its efforts to discredit the possession of said policy by showing that same had not been delivered so as to take effect as a binding obligation between the assured and appellant. The presumption in support of honesty and fair dealings will not be waived in the interest of that presumption which will assume the commission of a crime or the perpetration of a fraud in order to defeat a liability fairly established, as in the instant case. The evidence does not cast even a suspicion that the possession of said policy was acquired unlawfully, fraudulently, or by any means that would indicate it was not the intention of the parties that same should be delivered to take effect as a binding contract. To hold that the possession of said policy had not been acquired so as to become a valid and binding obligation between the parties would be to impute a wrongful acquisition of the possession of the policy by assured, and, through such imputation, destroy the legal effect flowing from such possession, viz. that from the delivery of the policy it is to be presumed that a credit was extended for the payment of the premium on demand; and that the provisions relied upon by appellant to defeat liability, being in the interest of appellant alone, had been waived, to wit, "advance payment of $92 to be actually paid in cash on or before the delivery of said policy, and that under no circumstances shall the insurance hereby applied for be in force until payment in cash of the first premium." 1 Joyce on Insurance (2d Ed.) § 76; Train v. Holland Purchase Ins. Co., 62 N. Y. 598-602; Bodine v. Exchange Fire Ins. Co., 51 N. Y. 117, 10 Am. Rep. 566; Griffith v. N. Y. Life Ins. Co., 101 Cal. 627, 36 Pac. 113, 40 Am. St. Rep. 96; Pender v. North State Life Ins. Co., 163 N. C. 98, 79 S. E. 293; Susquehanna Mutual Fire Ins. Co. v. Elkins, 124 Pa. 484, 17 Atl. 24, 10 Am. St. Rep. 609; Universal Fire Ins. Co. v. Block, 109 Pa. 535, 1 Atl. 523.

Waiver of the provision in the policy requiring prepayment of the premium in cash may be inferred from the delivery of the policy as a circumstance showing that prepayment was not intended to be insisted upon. Am. Emp. Lia. Ins. Co. v. Fordyce, 62 Ark. 562, 36 S. W. 1051, 54 Am. St. Rep. 305; Berliner v. Travelers' Ins. Co., supra; Insurance Co. v. Ende, 65 Tex. 118; Gurnett v. Atlas Mutual Ins. Co., 124 Iowa, 547, 100 N. W. 542. The possession of the policy by the assured from October 2, 1918, to October 20, 1918, the date of his death, without the cancellation of said policy having been made by appellant, was sufficient evidence of delivery of said policy with intent that same should take effect as a binding obligation. Berliner v. Travelers' Ins. Co., supra; Jones v. N. Y. Life Ins. Co., supra; Insurance Co. v. Brown (Tex. Civ. App.) 166 S. W. 661. The policy having been delivered without pre-

payment of the premium, credit will be presumed to have been given or time extended for the payment of the premium. Kollitz v. Equitable Mutual Fire Ins. Co., 92 Minn. 234, 99 N. W. 892. The unconditional delivery of the policy raised the presumption that said policy was a binding obligation in effect at the death of assured, as said policy had not been terminated by cancellation for failure to pay the premuim on demand. Washburn v. U. S. Casualty Co., 108 Me. 429, 81 Atl. 575; Latoix v. Germania Ins. Co., 27 La. Ann. 113; Washoe Tool Mfg. Co. v. Hibernia Fire Ins. Co., 7 Hun, 74.

[4, 5] With the exception of the prepayment of the premium the contract of insurance was complete; therefore the unconditional delivery of the policy operated as a waiver of the prepayment of the premium although said policy contained an express provision to the effect that appellant shall not be liable until the premium shall have been actually paid in cash, and on said delivery the policy became a binding obligation, securing to the appellee, the beneficiary named therein, all of the benefits contracted for by the assured, and such obligation continued notwithstanding appellant, under such circumstances, had the right to cancel the policy of insurance for nonpayment of the premium. This, however, only after demand had been duly made for the payment of same and default on the part of assured, as the mere nonpayment of the premium by assured after demand would not have the effect to relieve appellant of such obligation without at the same time the appellant gave notice of its election to rescind the contract for failure to pay the premium on demand. 1 Freeman on Ins. (2d Ed.) § 79; Washoe Tool Mfg. Co. v. Hibernia Fire Ins. Co., supra; Latoix v. Germania Ins. Co., supra.

The unconditional delivery of the policy involved necessarily the waiving of certain conditions contained in said policy for the benefit of appellant, to wit, the prepayment of the first premium in cash before the policy should take effect, and, thus modified, said contract remained in full force, though reduced in its advantages to appellant. Insurance Co. v. Tabor (Tex. Sup.) 230 S. W. 397; 1 Joyce on Ins. (2d Ed.) § 80.

The verdict of the jury, to wit, answers to special issues Nos. 1, 8, 9, 10, and 12, is amply sustained by the evidence, which, with other material facts established by the evidence beyond controversy, as collated and discussed herein, justifies the judgment in favor of appellee, in the rendition of which, and the proceedings leading thereto, the record does not show any material error.

The following additional facts were conclusively established: That J. E. McLemore, as appellant's general agent, was entitled to 75 per cent. of the first premium contracted to be paid by policy holders purchasing insurance within his territory; that agents limited to soliciting and taking applications for insurance were entitled to 60 per cent. of the first premium on insurance sold by them; that the assured, Lawrence E. Sommers, had been appointed soliciting agent for appellant before or at the time he applied for the insurance issued to him, and as such agent was entitled to the commission of 60 per cent. of the premium on his policy, amounting to $66.80, leaving of said premium of $92, the sum of $36.80, plus war tax of $4, equaling $40.80 due and to be paid, with interest at the rate of 6 per cent. from October 2, 1918, to date of judgment appealed from; said sums amounting to $47.02 will be allowed as a credit on said judgment as of date April 19, 1921.

The judgment of the court below, credited with said sum of $47.02, is affirmed.