**Ethel ROBERTS, Appellant,**

v.

**MASSACHUSETTS INDEMNITY AND LIFE INSURANCE COMPANY,
Appellee.**

No. 05–85–01229–CV.

Court of Appeals of Texas,
Dallas.

June 12, 1986.

Rehearing Denied July 15, 1986.

Bertran T. Bader, III, Cox & Bader, Dallas, for appellant.

Eric D. Nielsen, Houston, for appellee.

Before VANCE, DEVANY and HOLLINGSWORTH, JJ.

DEVANY, Justice.

Ethel Roberts appeals a summary judgment in favor of Massachusetts Indemnity and Life Insurance Company (MILICO) which denied her claim to death benefits under a $200,000 life insurance policy that MILICO issued to her husband Charles B. Roberts, Jr. (the insured). We disagree with Roberts's contention that MILICO's acceptance of a check from the insured which was not paid by the bank of the insured because of insufficient funds was adequate to activate MILICO's liability under the contract. Consequently, we affirm the judgment of the trial court.

The facts are not in dispute. On October 2, 1984, the insured applied to MILICO for an insurance policy. The application provides in part that MILICO:

shall incur no liability under this application until it has been received and approved, a policy issued and delivered and the full first premium specified in the policy has actually been paid to and accepted by the Company, all while the health, habits and any other conditions relating to each person proposed for insurance are as described in this application.

It continues:

no agent of the Company nor any broker is authorized to make or modify contracts or waive any of the Company's rights or requirements.

A check payable for $66.34, the amount of the first premium, was included with the application. On October 16, 1984, this check was returned unpaid because of insufficient funds. MILICO's bank presented the check for payment a second time on October 23, 1984, but it was again dishonored for the same reason.

Meanwhile, on October 18, 1984, MILICO issued a policy to the insured. The policy provides in part:

To be effective, this Policy must have been: (1) delivered to you; and (2) paid for by the first premium during the lifetime of the insured; and (3) paid for before any change in the conditions of insurability of the insured since the date of the application, except as otherwise provided in the receipt with the same number as the application.

WAIVER OR MODIFICATION—To be binding on us, any waiver or change in this Policy's provisions must be in writing. In addition, the written change must be signed by our President or Secretary. We will not be bound by any promise or representation made by or to anyone else.

Between October 18, 1984 and November 1, 1984, an agent of MILICO delivered the policy to the insured. On November 1, an unsigned computer-generated letter was mailed by MILICO to Roberts. It states in part: "You are a valued policyholder. Plus, you probably feel like we do and would like to get this matter resolved as soon as possible! So ... we urge you to return this letter to us within 10 days to keep your coverage in force."

On November 19, 1984, the insured died. Shortly thereafter, Roberts mailed MILICO a certified check in the amount of the first premium. Because the check did not identify the name or policy number of the in-

sured, MILICO deposited it in an account for unidentified checks. Roberts made a death claim under the policy. MILICO denied liability and this lawsuit ensued.

■ Although Roberts assigns three points of error, the parties agree that the controlling issue is whether the first premium was "paid" during the life of the insured so as to create liability in MILICO under the policy. We conclude that it was not.

In *Texas Mutual Life Insurance Association v. Tolbert*, 134 Tex. 419, 426, 136 S.W.2d 584, 588–89 (1940), the supreme court quoted with approval from *Martin v. Illinois Life Insurance Company*, Mo. App., 91 S.W.2d 646, 649 (1936):

It is a universal rule of law that in the absence of an agreement to the contrary, the delivery of a check to the creditor and his acceptance of it is not payment of the debt or obligation until the check has itself been paid, and that when the check is not paid, it may not be said to have constituted payment of the debt or obligation for which it was given. Moreover, this rule extends as well to transactions falling within the purview of insurance law, which contemplates that insurance premiums are ordinarily to be paid in cash, and that in the absence of a different intention or agreement, the giving of a check therefor will not operate as payment.

Because the contract did not specifically provide that payment by check would be unconditionally accepted, the condition precedent requiring payment of the first premium did not occur, and thus MILICO's liability under the policy did not arise.

■ The computer-generated letter of November 1 was ineffective as a waiver or modification of the payment requirements of the contract because it was not signed by the president or secretary of MILICO, as was required for an effective modification or waiver by the terms of the insurance contract. *See Ford v. Petroleum Life Insurance Co.*, 435 S.W.2d 164, 165–66 (Tex.Civ.App.—Waco 1968, writ ref'd n.r. e.).

■ Roberts also argues that, by delivering the policy to the insured, MILICO waived its right to payment as a condition precedent to incurring liability under the insurance contract. Again, we disagree. Roberts relies on *Bankers' Reserve Life Co. v. Sommers*, 242 S.W. 258 (Tex.Civ. App.—Dallas 1922, writ dism'd). In *Sommers*, the proposed insured was a soliciting agent of the defendant insurance company. The proposed insured agreed with the general agent of the company to pay the premiums by giving the general agent discounts on jewelry. The policy in *Sommers* stated that it was "issued in consideration of the application for this policy, which is hereby made a part of this contract, and of an advance premium of $92.00 to be actually paid in cash before the delivery thereof." 242 S.W. at 259. The Court held that, because the policy required payment of the first premium before delivery and because the general agent apparently delivered the policy to the proposed insured, there was a presumption that the first premium was paid before delivery of the policy. The Defendant failed to introduce any evidence rebutting this presumption.

*Sommers* differs materially from the case at bar because, in *Sommers*, the policy expressly required payment of the first premium before delivery whereas in the instant case there is no such requirement. Here, delivery was listed as one of three co-equal conditions precedent to MILICO's liability under the policy. Thus, in *Sommers*, but not in the instant case, where delivery of the policy was not to occur until after other conditions precedent had been fulfilled, delivery raised the presumption that these conditions had been met. Consequently, we do not read *Sommers* as a sweeping proclamation that, under all circumstances, delivery to the insured of an insurance policy waives all conditions precedent to the insurance company's liability under the policy. Such an interpretation would be contrary to the established rule that the parties may agree among themselves when liability is to attach, re-

gardless of the date that the policy is delivered:

> It is perfectly permissible for the parties to contract that the policy will not go into force and effect until the first premium payment has been made. And when such a provision is contained in the contract, it cannot ordinarily be contemplated as going into effect at the date of delivery.

1 A. Appleman & J. Appleman, *Insurance Law and Practice* § 106 (1981). This is also consistent with the requirement under section 3.44 of the Texas Insurance Code that all life insurance policies contain a grace period of at least one month "for payment of every premium *after the first.*" TEX.INS.CODE ANN. § 3.44 (Vernon 1981) (emphasis added).

We conclude that the contract between the parties effectively provided the date when MILICO would be liable for a death benefit, which would be when the payment of the first premium was paid, before any changes in insurability, or the delivery of the policy, whichever event occurred last.

The judgment of the trial court is affirmed.